

FILED

DEC 2 1 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**COBALT BOATS, LLC,**

      **Plaintiff,**

  **v.**                  **Civil Action No. 2:15cv21**

**SEA RAY BOATS, INC. and
BRUNSWICK CORP.,**

      **Defendants.**

## OPINION & ORDER

On December 14, 2016, the Court conducted a <u>Markman</u> hearing for the purpose of construing eight (8) disputed terms in the Patent at issue. Upon consideration of the Parties' briefs and oral arguments, the Court ruled from the bench as to some terms and took others under advisement. This Opinion and Order details the Court's reasoning.

## I. FACTUAL BACKGROUND

On January 23, 2015, Plaintiff Cobalt Boats, LLC ("Plaintiff") filed a one-count Complaint, alleging that Defendants Sea Ray Boats, Inc. and Brunswick Corporation ("Defendant")[1] has infringed U.S. Patent No. 8,375,880 ("the '880 Patent"). Compl. ¶ 1. On February 23, 2015, Plaintiff filed an Amended Complaint. Am. Compl. Plaintiff alleges that Defendants have infringed upon its possession of the Patent for a "Retractable Step for Boat Swim Platform" through Defendants' "manufacture, use, offer for sale, and sale of boats having an infringing submersible swim step that competes directly with the patented 'Swim Step' on Cobalt boats." Id. ¶ 1.

---

[1] Sea Ray Boats is a wholly owned subsidiary of Defendant Brunswick. Answ. at 4–5.

The '880 Patent was issued to Cobalt on February 19, 2013 for a "Retractable Step for Boat Swim Platform" ("Swim Step"), which is described as follows:

> A retractable step for use with a boat in water comprising at least one moveable arm pivotally coupled with the boat, a step coupled with the arm such that the step is moveable between a stored position above the water surface and a deployed position below the water surface, and a lock configured to hold the moveable arm in a stationary position when the step is in its deployed position, but is releasable to accommodate movement of the step to its stored position.

Id., Ex. A ('880 Patent) at 1.  Beginning in 2014, Plaintiff alleges that Defendants, two of its industry competitors, "began promoting and selling boats that include a Swim Step feature described as a 'submersible swim step'," which infringes upon the '880 Patent.  Am. Compl. ¶ 17.

Plaintiff contends that the Sea Ray boats with the infringing Swim Step include, but are not limited to, the Sea Ray 220 Sundeck, Sea Ray 240 Sundeck, Sea Ray 270 Sundeck, and Sea Ray 290 Sundeck.  Id. ¶ 22.  Specifically, Plaintiff argues that Defendants' version of the Swim Step infringes on at least claims 1, 3, 5, and 6 of the '880 Patent.  Id. ¶ 25.  On October 1, 2014, Cobalt notified Sea Ray of the alleged infringement, and to date, Plaintiff alleges that Sea Ray continues to manufacture, use, and sell its version of the Swim Step.  Id. ¶ 21.  Defendants deny having had knowledge of the '880 Patent prior to October 1, 2014, and they further deny that their products infringe upon the '880 Patent.  Answ. at 9–10.

## II.    PROCEDURAL HISTORY

On April 8, 2015, the Court entered its Rule 16(b) Scheduling Order.  Doc. 32.  On April 27, 2015, Defendants filed a Motion to Stay pending the U.S. Patent and Trademark Office ("USPTO") Patent Trial and Appeal Board's ("PTAB") completion of inter partes review ("IPR").  Doc. 34.  On May 11, 2015, Plaintiff opposed the Motion to Stay.  Doc. 37.  On September 25, 2015, the Parties submitted briefs on claim construction.  Docs. 46, 47.  On

2

October 16, 2015, the Parties filed responsive claim construction briefs. Docs. 48, 49. After the Court DEFERRED ruling on the Motion to Stay, Doc. 39, Defendant renewed the Motion on October 19, 2015, Doc. 50. On November 16, 2015, the Court GRANTED Defendants' Motion to Stay. Doc. 63.

On October 6, 2016, Plaintiff notified the Court that the PTAB had issued its final written decision in the IPR of the '880 Patent on September 28, 2016. Doc. 72. On October 20, 2016, Defendants filed a Motion to Stay Pending Appeal of Final Decision of Inter Partes Review. Doc. 78. On October 27, 2016, the Court entered a second Rule 16(b) Scheduling Order. Doc. 81. The Court also entered an Order directing the Parties to file a joint statement on claim construction, Doc. 82, and an Order Regarding Concurrent Litigation and Electronically Stored Information (ESI), Doc. 83. On October 31, 2016, the Parties filed a Joint Agreed Motion for Leave to File Supplemental Markman Briefs, Doc. 84, because PTAB issued its final written decision in the IPR of the patent at issue, see Doc. 72, after the Parties filed their opening briefs. On November 3, 2016, Plaintiff filed a Motion for Leave to File Notice of Determination to Not Appeal PTAB Final Written Decision Regarding U.S. Pat. No. 8,375,880.[2] Doc. 90. The Court GRANTED the Joint Agreed Motion regarding supplemental Markman briefs on November 30, 2016, Doc. 98, and the Parties each submitted supplemental briefs on December 7, 2016, Docs. 100, 101.

### III.   CLAIMS ASSERTED UNDER THE '880 PATENT

The '880 Patent was issued on February 19, 2013 for Plaintiff's invention entitled the "Swim Step." Am. Compl. ¶ 1. The Swim Step is installed on recreational boats to "provide a retractable step moveable between a stored position and a deployed position." Id. ¶ 9. "The '880

---

[2] Plaintiff states that Defendants' argument that Plaintiff could file a cross-appeal challenging the cancellation of claims 1, 3, and 6 . . . [such that] additional Markman proceedings and an additional trial may also be necessary" is moot because Plaintiff did not file such an appeal during the requisite appeal period. Doc. 90, Ex. A.

Patent generally covers a retractable step and a method of deploying the step wherein the step is rotatable from a stored position within a recess on the boat, such as in the rear swim platform, to a deployed position below the surface of the water." Id. ¶ 11.  As attached to a recreational boat, the invention when deployed and locked below the water surface allows "swimmers . . . to reach the swim platform or . . . rest on the step while at least partially submerged in the water." '880 Patent at 1:41–46.  When unlocked and stored, "the step is above the water surface and does not add unwanted length to the boat." Id. at 1:52–54.

> Specifically, the '880 Patent relates to
>
> A deployable swim step for use with a boat in water comprising: a step having a top side and an underside; means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

Id. at 4:39–51.

The '880 Patent contains six (6) claims, and claims 2, 4, and 5 remain at issue.  Doc. 99 at 1.  However, while claim 1 has been found to be unpatentable, Doc. 100 at 2 n.1, "[s]everal terms in claim 1 remain in dispute because claims 2 and 4 are dependent upon claim 1," Doc. 99 at 1.  Claims 1 and 5 are independent.  Doc. 100.  The claims are reproduced below, with disputed terms underlined where they appear.

- **Claim 1:** A retractable step <u>for use with a boat in water</u> comprising: a base having a recess; a pair of stationary arms, each of said arms coupled with said base; a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms; a <u>step having a top side and an underside</u>, said step coupled with said moveable arms and <u>capable of being rotated 180° between a stored position</u> within said recess, wherein said underside is exposed, <u>and a deployed position</u> below the water surface, wherein

4

said top side is exposed; and a <u>spring biased locking mechanism</u> configured to hold at least one of said moveable arms in a stationary position when <u>said platform</u> is in said deployed position and releasable to accommodate movement of <u>said platform</u> to said stored position.

- **Claim 2:** The retractable step of claim 1, wherein said base is <u>demountably coupled</u> with the boat.
- **Claim 4:** The retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water.
- **Claim 5:** A deployable swim step <u>for use with a boat in water</u> comprising: a <u>step having a top side and an underside</u>; <u>means for coupling</u> said step with the boat, said coupling means <u>configured to permit rotation of said step 180° from a stored position</u> above the water surface, wherein said underside is exposed, <u>and a deployed position</u> below the water surface, wherein said top side is exposed; and <u>means for locking</u> said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

## IV.    LEGAL PRINCIPLES OF CLAIM CONSTRUCTION

### A.    General Principles

The purpose of a <u>Markman</u> hearing is to assist the court in construing the meaning of the patent(s) at issue. <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 371 (1996); <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996). Patents consist of "claims," and the construction of those claims "is a question of law, to be determined by the court." <u>Markman</u>, 517 U.S. at 371. A court need only construe, however, claims "that are in controversy, and only to the extent necessary to resolve the controversy." <u>Vivid Techs., Inc. v. Am. Science Eng'g, Inc.</u>, 200 F.3d 795, 803 (Fed. Cir. 1999) (citations omitted). To be clear, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the

determination of infringement.  It is not an obligatory exercise in redundancy."  NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1311 (Fed. Cir. 2005) (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997)).

Claim construction begins with the words of the claims.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves . . . .").  Words in a claim are generally given their ordinary meaning as understood by a person of ordinary skill in the art ("POSITA").  Id.  This "person of ordinary skill in the art is deemed to read the claim term not only in the particular claim in which the disputed term appears but also in the context of the entire patent, including the specification."  Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  "In some cases, . . . the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words."  Id. at 1314.  Often, however,

> determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art.  Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claims language to mean.

Id.

Further, the claims themselves can provide substantial guidance as to the meaning of particular claim terms.  Id.  First, "the context in which a term is used within a claim can be highly instructive."  Id.  In addition, other claims of the patent in question, both asserted and unasserted, can also be useful because claim terms are "normally used consistently throughout the patent" and therefore "can often illuminate the meaning of the same term in other claims."

Id.

The claims should not be read alone, however, but should be considered within the context of the specification of which they are a part. Markman, 52 F.3d at 978; Markman, 517 U.S. at 390. As the Federal Circuit stated in Vitronics and Phillips, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips, 415 F.3d at 1315. A court, however, must not read in limitations from the specification without clear intent to do so. Thorner v. Sony Comp. Entm't. Am. LLC, 669 F.3d 1362, 1366 (Fed. Cir. 2012). Furthermore, a patentee is free to be his or her own lexicographer, and thus if the patentee defines a term in the specification differently than its ordinary meaning, the patentee's definition controls. Phillips, 415 F.3d at 1316.

In addition to consulting the specification, a court may also consider the patent's prosecution history, if in evidence, because it provides information regarding how the USPTO and the inventor understood the patent. See id. at 1317. It also enables the court to determine if the inventor limited the invention during the course of prosecution. Id.

> [W]here an applicant whose claim is rejected on reference to a prior patent . . . voluntarily restricts himself by an amendment of his claim to a specific structure, having thus narrowed his claim in order to obtain a patent, he may not by construction . . . give the claim the larger scope which it might have had without the amendments.

I.T.S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 444 (1926). Thus, consulting prior art reference in the prosecution history is permissible. Vitronics, 90 F.3d at 1583.

These elements of the patent itself—the claims, the specification, and its prosecution history—constitute intrinsic evidence of claim construction. In addition to such intrinsic evidence, a court may consider extrinsic evidence to determine the meaning of disputed claims.

_Phillips_, 415 F.3d at 1317. Such extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." _Id._ (citing _Markman_, 52 F.3d at 980). However, the court should not rely on extrinsic evidence when the intrinsic evidence removes all ambiguity. _Vitronics_, 90 F.3d at 1583.

Such extrinsic evidence generally is considered less reliable than the intrinsic evidence and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of intrinsic evidence." _Phillips_, 415 F.3d at 1317–18. With respect to expert evidence, for example,

> [c]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court . . . [, and] a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent.

_Id._ at 1318.

With respect to general usage dictionaries, the Federal Circuit noted that "[d]ictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used . . . in claim construction," and further noted that "a dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.'" _Id._ at 1322 (citing _Vitronics_, 90 F.3d at 1585). However, the Federal Circuit cautions that (1) "'a general-usage dictionary cannot overcome art-specific evidence of the meaning' of a claim term;" (2) "the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent;" and (3) "[t]here is no guarantee that a term is used in the same way in a treatise as it would be by the patentee." _Id._ at 1322 (quoting _Vanderlande Indus. Nederland BV v. Int'l Trade Comm'n_, 366 F.3d 1311, 1321

(Fed. Cir. 2004)).[3]  Indeed, "different dictionary definitions may contain somewhat different sets of definitions for the same words.  A claim should not rise or fall based upon the preferences of a particular dictionary editor, . . . uninformed by the specification, to rely on one dictionary rather than another."  Id.

## B.  The "Canons of Claim Construction"

The Federal Circuit has recognized certain guideposts, or "canons of construction," to assist a district court in determining the meaning of disputed claim terms and phrases.  These are merely guideposts, however, and are not immutable rules:[4]

1.  Doctrine of Claim Differentiation: Ordinarily, each claim in a patent has a different scope.  See, e.g., Versa Corp. v. Ag-Bag Int't Ltd., 392 F.3d 1325, 1330 (Fed. Cir. 2004).  Ordinarily, a dependent claim has a narrower scope than the claim from which it depends.  See, e.g., Phillips, 415 F.3d at 1315.  Ordinarily, an independent claim has a broader scope than a claim that depends from it.  See, e.g., Free Motion Fitness, Inc. v. Cybex Int'l, Inc., 423 F.3d 1343, 1351 (Fed. Cir. 2005).

2.  Ordinarily, claims are not limited to the preferred embodiment disclosed in the specification.  See, e.g., Phillips, 415 F.3d at 1323.

3.  Ordinarily, different words in a patent have different meanings.  See, e.g., Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1119–20 (Fed. Cir. 2004).

4.  Ordinarily, the same word in a patent has the same meaning.  See, e.g., Phillips, 415 F.3d at 1314.

5.  Ordinarily, the meaning should align with the purpose of the patented invention.

---

[3] In Phillips, the Federal Circuit thus expressly discounted the approach taken in Texas Digital Sys., Inc. v. Telegenix, Inc., 308 F. 3d 1193 (Fed. Cir. 2002), in which the court placed greater emphasis on dictionary definitions of claim terms.  Phillips v. AWH Corp., 415 F.3d 1303, 1319–24 (Fed. Cir. 2005) ("Although the concern expressed by the court in Texas Digital was valid, the methodology it adopted placed too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources, in particular the specification and prosecution history.").  The Federal Circuit reaffirmed the approach in Vitronics, Markman, and Innova as the proper approach for district courts to follow in claim construction, but acknowledged that there was "no magic formula" for claim construction, and that a court is not "barred from considering any particular sources . . . as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."  Id., at 1324.
[4] This list is derived from the one provided in the FEDERAL JUDICIAL CENTER, PATENT LAW AND PRACTICE § 5.I.A.3.d (5th ed. 2006).

See, e.g., Innovad Inc. v. Microsoft Corp., 260 F.3d 1326, 1332–33 (Fed. Cir. 2001).

6.      Ordinarily, general descriptive terms are given their full meaning. See, e.g., Innova/Pure Water, Inc., 381 F.3d at 1118.

7.      If possible, claims should be construed so as to preserve their validity. See, e.g., Energizer Holdings, Inc. v. Int'l Trade Comm'n, 435 F.3d 1366, 1370–71 (Fed. Cir. 2006).

8.      Ordinarily, absent broadening language, numerical ranges are construed exactly as written. See, e.g., Jeneric/Pentron, Inc. v. Dillon Co., 205 F.3d 1377, 1381 (Fed. Cir. 2000).

9.      Ordinarily, absent recitation of order, steps of a method are not construed to have a particular order. See, e.g., Combined Sys., Inc. v. Def. Tech. Corp. of Am., 350 F.3d 1207, 1211–12 (Fed. Cir. 2003).

10.     Absent highly persuasive evidentiary support, a construction should literally read on the preferred embodiment. See, e.g., Cytologix Corp. v. Ventana Med. Sys., Inc., 424 F.3d 1168, 1175 (Fed. Cir. 2005).

## C.    Construction of "Means-Plus-Function" Claims

"Means-plus-function limitations permit a patentee to claim an element of her invention in terms of the element's function, without in the claim itself reciting corresponding structure." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1363-64 (Fed. Cir. 2013). Such claims are governed by 35 U.S.C. § 112(f), which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f) (formerly 35 U.S.C. § 112 ¶ 6).

When presented with a request to invoke §112(f), the court must first determine if the section applies. "Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." Phillips, 415 F.3d at 1311 (citing Watts v. XL Sys., Inc., 232 F.3d 877, 880–81 (Fed. Cir. 2000)). There is a rebuttable

presumption that § 112(f) applies "[i]f the word 'means' appears in a claim element in association with a function;" that "presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function." Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005). Conversely, a claim term that does not use "means" triggers a rebuttable presumption that § 112(f) does not apply. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1023 (Fed. Cir. 2006). The resulting presumption can be rebutted "by showing that the claim element recite[s] a function without reciting sufficient structure for performing that function." Id.

Recently, in Williamson v. Citrix Online, LLC, the Federal Circuit "abandon[ed]" the "heightened burden" standard required to overcome the "presumption that a limitation lacking the word 'means' is not subject to § 112, para. 6." 792 F.3d 1339, 1349 (Fed. Cir. 2015). The Federal Circuit returned to the pre-Lighting World standard that begins instead with a "balanced analytical scale." Id.; see Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1358–62 (Fed. Cir. 2004), overruled by Williamson, 792 F.3d 1339. To wit,

> [t]he standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure. When a claim lacks the word "means," the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites "function without reciting sufficient structure for performing that function." The converse presumption remains unaffected: "use of the word 'means' creates a presumption that § 112, ¶ 6 applies."

Id. (citations omitted). Therefore, a court must consider whether "the claim language, read in light of the specification, recites sufficiently definite structure to avoid § 112, ¶ 6." Media Rights Techs., Inc. v. Capital One Fin. Corp., 800 F.3d 1366, 1372 (Fed. Cir. 2015) (citing Robert Bosch, LLC v. Snap-On Inc., 769 F.3d 1094, 1099 (Fed. Cir. 2014)).

"Construction of a means-plus-function limitation includes two steps. 'First, the court

must determine the claimed function.   Second, the court must identify the corresponding structure in the written description of the patent that performs the function.'" Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (quoting Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006)).   A structure disclosed in the specification is a "corresponding structure" if the specification or prosecution history "clearly links or associates that structure to the function recited in the claim." Noah Sys., Inc., 675 F.3d at 1311. Such disclosure must be adequate; thus, a "means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." Id. at 1312.

**D.   Indefiniteness**

Whether a patent is invalid is a legal question. Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1331 (Fed. Cir. 2010).   "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014).   "'Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.'" Enzo Biochem, 599 F.3d at 1331 (quoting Young v. Lumenis, Inc., 492 F.3d 1336, 1344 (Fed. Cir. 2007)).

It is not a court's "function to rewrite claims to preserve their validity." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1349 (Fed Cir. 2002) (citing Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999)).   Courts have found claims indefinite and thus invalid if, for example, the scope of a truncated limitation is not discernable.   See id. at 1348–49. Additionally, a court may not adopt "a completely subjective construction of" a claim term in

order to find it valid.  See Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1350–51 (Fed. Cir. 2005), abrogated on other grounds by Nautilus, 134 S. Ct. 2120.  Thus, if the parties offer no objective definitions of a disputed term, the term is indefinite.  See id.

## V.    THE PTAB'S DECISION

Unlike district courts, which must identify the correct construction of a patent claim, the PTAB "gives claims their broadest reasonable interpretation consistent with the specification." PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, 815 F.3d 734, 740 (Fed. Cir. 2016).  Therefore, the PTAB's claim constructions are not controlling authority for a district court.  See, e.g., Polaris Indus., Inc. v. CFMOTO Powersports, Inc., No. 10-4362, 2016 WL 727109, at *5 (D. Minn. Feb. 23, 2016).

Here, the PTAB issued its final written decision on the '880 Patent claims on September 28, 2016.  See Doc. 72.  The PTAB decided that the terms "recess," "arm," "exposed," and "means for coupling said step with the boat" required construction.  Id., Ex. A at 8–14.  The PTAB "preliminarily adopted [Defendants'] proposed constructions for . . . 'a step having a top side and an underside' and 'means for locking said coupling means.'"  Doc. 101 at 2 n.2. Plaintiff argued prior to the Markman hearing that because briefing was incomplete when the PTAB construed the terms and the constructions do not bind this Court, "the preliminary adoption of [Defendants'] constructions should carry no weight."  Id.  Plaintiff claimed that "[f]ew of the PTAB's claim constructions are at issue in this litigation, and much of the IPR proceeding has little bearing on this Court's claim construction under the Phillips standard."  Id. at 5.  Defendant conversely claimed that "aspects of the PTAB's analysis as to claims 1 and 6 are relevant to the claim construction to be undertaken by this Court" and urged the Court to consider the PTAB's plain language analyses in particular.  Doc. 100 at 1, 5.

## VI.     DISPUTED TERMS

The Parties disputed the following terms.  The Court stated on the record the reasons for its constructions and here explains its reasoning in greater detail.

### A.     "spring biased locking mechanism"

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of this term is **"a structure that mechanically locks a component in place through the use of a spring biased mechanism."**  At the hearing, the Court **RULED** that this term is not a means-plus-function term.  See 35 U.S.C. § 112(f).  The claim language does not include the term "means," see '880 Patent 4:28–32, and a presumption therefore arises that "spring biased locking mechanism" is not a means-plus-function term.  See <u>Williamson</u>, 792 F.3d at 1349.

Defendants argued that the applicable presumption is rebutted because "spring biased locking" modifies "mechanism" in the same way that phrases can modify "means" and impart a means-plus-function construction.  See '880 Patent at 4:28–30.  Plaintiff emphasized that the specification notes the use of a spring mechanism to accomplish its locking function.  The Court agreed that "spring biased" imparts structure to the term beyond the "locking" function.  Further, "spring" and "lock" are commonly understood to refer to structure.  Therefore, the Court held that in context, the term "spring biased locking mechanism" does not overcome the presumption applied and is not a means-plus-function term.  Consequently, the Court ensured that its construction of the term also encompasses the variations of the spring included in the claim's scope.

### B.     "means for locking"

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of this term's structure is **"spring-biased sliding pin mechanism,**

common cotter pin, fastening eye bolt, trap door automatic catch lock, and the equivalents of these structures at time of patent issuance," and the proper construction of this term's function is "mechanically locking said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position."

The Parties agreed that this term is a means-plus-function term under 35 U.S.C. § 112(f) but disagreed about the description of the disclosed structures' function. Plaintiff proposed the term "securing," while Defendant suggested "interlocking."

The Court noted that the preferred embodiment works through mechanical interlocking but declined to use the word "interlocking," which is specific. The Court instead construed the term "means for locking" using the words "mechanically locking" to properly captures the mechanical interaction that each of the described structures requires to prevent or enable movement. See '880 Patent at 3:39–41.

C.      "means for coupling"

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of this term's structure is **"moveable arms and stationary arms, and the equivalents of these structures, and the equivalents of these structures at time of patent issuance,"** and the proper construction of its function is **"locking the step to the boat in a manner which permits rotation of the step 180° from the stored position above the water surface where the underside is exposed to the deployed position where the top side is exposed below the water surface."**

Plaintiff proposed the structural construction. The Parties agreed that "means for coupling" is a "means-plus-function" term under 35 U.S.C. § 112(f) and agreed about the term's function. Defendants argued that the proper construction must include not only the moveable and stationary arms, but also the flange, rail, and base, a combination which mirrors the structure

15

disclosed in the specification and fully permits coupling to the boat. Plaintiff argued that the broad standard applied during IPR is applied to a means-plus-function term during construction, necessitating the broadest possible construction of "means for coupling." Thus, Defendants' inclusion of the flange, rail, and base inappropriately limits the claim.

The Court agreed with Plaintiff and held that only the moveable arms and stationary arms are required to couple the step to the boat. The Court's functional construction also embodies the rotation necessary for the Patent's usefulness.

**D.    "step having a top side and underside"**

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of this term is **"a level structure having opposed horizontally oriented top and bottom surfaces on which a user can step, stand, or sit."** The Court considered this term alongside "capable of being rotated 180° between a stored position . . . and a deployed position."

Plaintiff emphasized the necessity of the step to be horizontal or level to allow users to step safely, while Defendants argued that Plaintiff's construction narrowed the term to the preferred embodiment.

The Court and the Parties agreed that the step need not take a specific outer shape (i.e., it can be "circular, semi-circular, triangular, [or] substantially polygonal"). See '880 Patent at 3:32–35. However, the Court rejected Defendants' argument that the top-to-bottom shape of the step—rather than the outer shape or horizontal surface—can be any shape because the Patent's usefulness restricts the top-to-bottom shape to one that permits safe stepping. See Innovad Inc. 260 F.3d at 1332–33. The user's ability to safely step also influenced the Court's inclusion of the words "level structure." The Court avoided including the word "flat" to prevent the

implication that the surface must not include attached material such as non-skid material, particularly because the specification allows for such attached material. See '880 Patent at 3:29–32.

**E.    "capable of being rotated 180° between a stored position ... and a deployed position" / "configured to permit rotation of said step 180° from a stored position ... and a deployed position"**

After considering the claim language and the Parties' arguments, the Court **RULED** that these terms require no further construction. The terms' plain and ordinary meaning is readily apparent to a POSITA. The Court is not required to construe every disputed term. See 02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd., 521 F.3d 1351, 1362 (Fed. Cir. 2008); see also Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., et al., No. 3:09cv791, 2010 WL 3291830, at *1 (E.D. Va. Aug. 19, 2010).

The Parties disagreed about the extent of the step's rotation. Plaintiff argued that the terms be given their ordinary meaning and encompass "about 180°." Defendants argued that the term means "at least 180°." Neither Party argued that the term means "exactly 180°."

While the PTAB reasoned that the claims of the Patent "simply require that the step is 'capable of being rotated 180°,'" Doc. 72, Ex. A at 19, the Court relied on the principle of claim construction requiring numerical figures to be construed exactly as written. See, e.g., Jeneric/Pentron, 205 F.3d at 1381. Therefore, the Court declined to further construe these terms.

**F.    "demountably coupled"**

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of "demountably coupled" is **"coupled to the boat in a manner which would enable it to be removed in the ordinary course of use."**

Plaintiff argued that this term needs no further construction, while Defendants urged the Court to include language prohibiting the removal of the step from the boat by unusual force that

could damage the base or boat.

The Court agreed that Defendants' suggestion improves the term construction. The claim intends a regular user to remove the step without resorting to the use of damaging tools such as a saw.

**G.      "for use with a boat in water"**

After considering the claim language and the Parties' arguments, the Court **RULED** that this term requires no further construction. The term's plain and ordinary meaning is readily apparent to a POSITA. The Court is not required to construe every disputed term. <u>See</u> <u>02</u> <u>Micro</u>, 521 F.3d at 1362; <u>see also</u> <u>Sunbeam</u>, 2010 WL 3291830, at \*1. Claim 5 contains "for use with a boat in water," and the preamble is unnecessary to construe the term; the term limits the claim's scope. <u>See</u> '880 Patent at 4:39–4:40. Therefore, the Court declined to further construe this term.

**H.      "said platform"**

After considering the claim language and the Parties' arguments, the Court **RULED** that the proper construction of "said platform" is **"said step."** This term is not indefinite and clearly refers to the step. The term's plain and ordinary meaning is readily apparent to a POSITA.

Defendants argued at the hearing that the term "said platform" is invalid because it lacks antecedent basis. Plaintiff admitted at the hearing that "platform" is a typographical error in the Patent and that "step" should instead have been used as elsewhere in the Patent. <u>See</u> <u>Phillips</u>, 416 F.3d at 1314.

The Patent is presumed to be valid, <u>Enzo Biochem</u>, 599 F.3d at 1331, and the Court agreed that "said platform" is a clear reference to the step.

## VII.      CONCLUSION

For the reasons stated on the record and elaborated in this Opinion and Order, the Court

construed the disputed terms as follows:

| Disputed Term | The Court's Construction |
|---|---|
| spring biased locking mechanism | A structure that mechanically locks a component in place through the use of a spring biased mechanism. |
| means for locking | **Structure(s):** Spring-biased sliding pin mechanism, common cotter pin, fastening eye bolt, trap door automatic catch lock, and the equivalents of these structures at time of patent issuance.<br>**Function:** Mechanically locking said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position. |
| means for coupling | **Structure(s):** Moveable arms and stationary arms, and the equivalents of these structures, and the equivalents of these structures at time of patent issuance.<br>**Function:** Locking the step to the boat in a manner which permits rotation of the step 180° from the stored position above the water surface where the underside is exposed to the deployed position where the top side is exposed below the water surface. |
| step having a top side and underside | A level structure having opposed horizontally oriented top and bottom surfaces on which a user can step, stand, or sit. |
| capable of being rotated 180° between a stored position . . . and a deployed position / configured to permit rotation of said step 180° from a stored position . . . and a deployed position | No further construction is needed.  Plain and ordinary meaning. |
| demountably coupled | Coupled to the boat in a manner which would enable it to be removed in the ordinary course of use. |
| for use with a boat in water | No further construction is needed.  Plain and ordinary meaning.  Term does limit scope of claim. |
| said platform | Said step. |

The Clerk is **REQUESTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED.**

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
_12/21_, 2016