FILED
IN OPEN COURT
MAY 25 2017
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**COBALT BOATS, LLC,**

*Plaintiff,*

v.

**SEA RAY BOATS, INC., and BRUNSWICK CORPORATION,**

*Defendants.*

**No.: 2:15-CV-00021-HCM-LRL**

**[DRAFT] FINAL PRETRIAL ORDER**

In conformity with Rule 16 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Virginia relating to pretrial procedure, it is **ORDERED** that:

## I. STIPULATION OF UNDISPUTED FACTS

1. Cobalt Boats, LLC is a Delaware limited liability company headquartered in Neodesha, Kansas.

2. Cobalt has authorized dealers in the Eastern District of Virginia, including, but not limited to Hoffmaster's Marina, which is located in Woodbridge, Virginia and Bill's Marine, which is located in Portsmouth, Virginia.

3. Sea Ray Boats, Inc. is a Florida Corporation headquartered in Knoxville, Tennessee.

4. Brunswick Corporation is a Delaware corporation headquartered in Lake Forest, Illinois.

5. The parties compete in the sale of recreational boats to the public.

6. The Court has subject matter jurisdiction over this action and personal jurisdiction over the parties to this action.

7. On or about June 24, 2010, Cobalt employees William St. Clair, Jr., Timothy Kaiser, Bret Chilcott, and Sean Callan filed an application for a patent on a retractable swim step and assigned that patent application (U.S. Patent Application Number 12/822,564) to Cobalt. That patent application matured into U.S. Patent No. 8,375,880 (the "'880 Patent"), which was issued by the United States Patent and Trademark Office on February 19, 2013.

8. Cobalt owns by assignment the entire right, title, and interest in and to the '880 Patent.

9. Beginning in 2014, Defendants introduced a swim step feature described by Defendants as a "submersible swim step" on certain of their boats. Defendants began making, using, selling and offering for sale in the United States the submersible swim step on the SEA RAY 220 SUNDECK, SEA RAY 240 SUNDECK, SEA RAY 270 SUNDECK, and SEA RAY 290 SUNDECK boats, among others. Today, Defendants offer their submersible swim step on the following Sea Ray boat models:

- Sundeck 220 (also called 220 SDX)
- Sundeck 240 (also called 240 SDX)
- Sundeck 270 (also called 270 SDX)
- Sundeck 290 (also called 290 SDX)
- 290 SDXO
- 230 SLX
- 230 SPX
- 310 SLXO

- 230 SLW

10. The '880 Patent has a priority date of June 24, 2009, and the claims of the '880 Patent expire on June 24, 2030.

11. Asserted Claims 2 and 4 (which depend from claim 1) and 5 provide as follows:

**Claim 1**: A retractable step for use with a boat in water comprising:

a base having a recess;

a pair of stationary arms, each of said arms coupled with said base;

a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms;

a step having a top side and an underside, said step coupled with said moveable arms and capable of being rotated $180^0$ between a stored position within said recess, wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed; and

a spring biased locking mechanism configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to accommodate movement of said platform to said stored position.

**Claim 2**: The retractable step of claim 1, wherein said base is demountably coupled with the boat.

**Claim 4:** The retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water.

**Claim 5:** A deployable swim step for use with a boat in water comprising:

a step having a top side and an underside;

means for coupling said step with the boat, said coupling means configured to permit rotation of said step 180° from a stored position above the water surface,

wherein said underside is exposed, and a deployed position below the water surface, wherein said top side is exposed;

and means for locking said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

12. The Court issued an Opinion & Order on December 21, 2016 (ECF No. 110), as corrected on March 23, 2017 (ECF No. 162), construing the terms of the Asserted Claims underlined above as follows:

| Disputed Term | The Court's Construction |
|---|---|
| spring biased locking mechanism | A structure that mechanically locks a component in place through the use of a spring biased mechanism. |
| means for locking | **Structure(s):** Spring-biased sliding pin mechanism, common cotter pin, fastening eye bolt, trap door automatic catch lock, and the equivalents of these structures at time of patent issuance. **Function:** Mechanically locking said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position. |
| means for coupling | **Structure(s):** Moveable arms and stationary arms, and the equivalents of these structures, and the equivalents of these structures at time of patent issuance. **Function:** Securing the step to the boat in a manner which permits rotation of the step 180° from the stored position above the water surface where the underside is exposed to the deployed position where the top side is exposed below the water surface. |
| step having a top side and underside | A level structure having opposed horizontally oriented top and bottom surfaces on which a user can step, stand, or sit. |
| capable of being rotated 180° between a stored position . . . and a deployed position / configured to permit rotation of said step 180° from a stored position . . . and a deployed position | No further construction is needed. Plain and ordinary meaning. |

| | |
|---|---|
| demountably coupled | Coupled to the boat in a manner which would enable it to be removed in the ordinary course of use. |
| for use with a boat in water | No further construction is needed. Plain and ordinary meaning. Term does limit scope of claim. |
| said platform | Said step. |

Subject to the Court's rulings on any pending motions and on Motions *in limine*, the Parties have agreed to continue working together up to and during trial to see if the issues may be narrowed and the trial streamlined by way of further stipulation.

## II. EXHIBITS

### A. Exhibit Lists

The parties have segregated the documents, summaries, and other exhibits that may be offered into evidence at trial into exhibit lists. The parties' Exhibit Lists are attached hereto as **Appendices 1–4**. The lists of exhibits for which no objections have been made are attached hereto as **Appendix 1** (Cobalt) and **Appendix 2** (Defendants). The lists of exhibits for which objections have been made are attached hereto as **Appendix 3** (Cobalt) and **Appendix 4** (Defendants). The parties agree to deliver to the Court an original and two copies of their respective exhibits sequentially numbered with tabs in three (3) inch binders one (1) business day before trial.

For any document that has been previously designated by any party as either "CONFIDENTIAL," "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY: PROSECUTION BAR" under the Protective Order (ECF No. 41) in this case, and that party has not removed said designation prior to trial, the parties intend to offer such document under said designation, subject to an appropriate motion to the Court in accordance with said Protective Order.

**B. <u>Efforts to Resolve Objections</u>**

The parties have been working diligently to resolve or narrow all objections lodged as to their respective exhibits. The parties have successfully resolved many objections and will continue their efforts to resolve the objections to each other's proposed exhibits.

**C. <u>Exhibits to Which No Objections Have Been Made</u>**

The parties agree that the documents, summaries and other exhibits listed in their Exhibit Lists to which no objection has been specified (**Appendices 1 and 2**), may be introduced into evidence without the necessity of further proof of admissibility, although these exhibits must be introduced into evidence through a competent witness. This is without prejudice to any pending motions *in limine* and *Daubert* motions concerning certain of these documents and related testimony.

**D. <u>Rebuttal Exhibits</u>**

The Exhibit Lists attached hereto do not include potential rebuttal exhibits that may or may not be introduced into evidence. The lists also include documents relied upon by experts in rendering opinions which may or may not be introduced into evidence. The parties reserve the right to offer exhibits for purposes of cross examination, impeachment or rebuttal that are not included in the exhibit lists.

The parties will meet and confer as to any objections to any demonstrative exhibits, animations or other trial presentation materials at 9 p.m. ET the night before their use at trial. The parties will cooperate in seeking to have the Court resolve any objections prior to the proposed testimony if they are unable to resolve among themselves.

## III. WITNESSES

### A. Identification of witnesses in accordance with Rule 26(a)(3)(A)(i) indicating any unresolved objections to the use of a particular witness and the grounds therefore, and designating those witnesses expected to testify by deposition in accordance with Rule 26(a)(3)(A)(ii)

#### 1. Witnesses

The parties' respective witness lists are attached hereto as **Appendices 5 & 6**.

The parties do not waive any objection to the testimony of the identified witnesses, raised either via a motion *in limine*, a *Daubert* motion, at the pre-trial conference, or at trial.

The parties reserve the right to call additional witnesses as may be necessary solely for the purpose of impeachment or rebuttal.

#### 2. Designations of Deposition Testimony

Attached as **Appendix 7** are Cobalt's Designations of Deposition Testimony, and Defendants' objections and fairness designations thereto. Cobalt reserves the right to use any deposition testimony as may be necessary solely for the purpose of impeachment or rebuttal. Cobalt reserves the right to remove any of its own designations in light of any Court decisions on its pending motions *in limine* or if it no longer deems such designations necessary.

Attached as **Appendix 8** are Defendants' Designations of Deposition Testimony, and Cobalt's objections and fairness designations thereto. Defendants reserve the right to use any deposition testimony as may be necessary solely for the purpose of impeachment or rebuttal. Defendants reserve the right to remove any of its own designations in light of any Court decisions on its pending motions *in limine* or if it no longer deems such designations necessary.

## IV. DESIGNATIONS OF DISCOVERY RESPONSES

Cobalt designates the following discovery responses:

- Brunswick's April 3, 2017 Supplemental Responses to Cobalt's Interrogatories
- Brunswick's Responses to Cobalt's Requests for Admission

Defendants designate the following discovery responses:

- Cobalt's April 3, 2017 Fourth Supplemental Responses to Defendants' Interrogatories (1-16)
- Cobalt's April 3, 2017 Response to Defendants' Interrogatory (17)

## V. FACTUAL CONTENTIONS

The parties agree that this list of Factual Contentions may be supplemented and that the absence of a Factual Contention on this list shall not constitute waiver and shall not preclude the admission of relevant evidence at trial. The factual contentions of the parties (in addition to the Stipulated Facts identified in Section 1, above) are as follows:

### A. Cobalt's Contentions:

1. On February 19, 2013, the USPTO duly and legally issued the '880 Patent, which matured from U.S. Patent Application Number 12/822,564 filed on June 24, 2010.

2. The '880 Patent generally covers a retractable step that is rotatable from a stored position within a recess on the boat, such as in the rear swim platform, to a deployed position below the surface of the water.

3. The '880 Patent is valid and enforceable.

4. Defendants do not have a license, or any other authorization, from Cobalt to practice the claims of the '880 Patent or incorporate the claimed invention into their Sea Ray line of boats.

5. Pursuant to 35 U.S.C. § 287, Cobalt prominently places the '880 Patent number on all of its boats with the Swim Step feature. Cobalt has so marked its boats with the Swim Step consistently since early 2013.

6. The patented Swim Step feature has been a huge success for Cobalt. Since its introduction in the marketplace, Cobalt estimates, based on (1) direct customer feedback at boats shows where customers indicate that they made a purchasing decision because of the Swim Step feature; (2) customer survey results received by Cobalt; and (3) dealer feedback, that 25-33% of its boats sold with the Swim Step are attributable directly to the Swim Step. From 2011-2012, Cobalt saw a 24% increase in the sale of boats with the Swim Step, and from 2011-2015, Cobalt saw a 33% increase in such sales. From 2009 through 2015 – a period of time when the only significant change in Cobalt boats was the addition of the Swim Step feature – Cobalt's market share increased 12%.

7. In 2012, Defendants' engineers began designing and developing a swim step that copied the design of Cobalt's Swim Step feature. During this process, Defendants inspected a Cobalt Swim Step and observed that it had "patent pending" markings. Defendants learned of the '880 Patent within a few days of its issuance in February 2013.

8. Due to Cobalt's market share and sales success pertaining to its patented Swim Step feature, beginning in 2014, Defendants Sea Ray and Brunswick began promoting and selling boats that include a swim step feature described as a "submersible swim step" that infringes Cobalt's '880 Patent. Defendants Sea Ray and Brunswick also promote their infringing boats in their marketing materials, through their dealers, and at trade shows throughout the United States.

9. From 2009-2013, while Cobalt's market share was increasing, Sea Ray's market share decreased almost 10%. In 2014, when Sea Ray began offering the Swim Step on its boats – which was the only significant change made to Sea Ray boats from 2013 to 2014 – Sea Ray's market share stopped dropping and began to increase.

10. Defendants Sea Ray and Brunswick do not have a license, or any other authorization, from Cobalt to make, use, offer for sale, sell, or import the inventions covered by the claims of the '880 Patent and do not have authorization from Cobalt to incorporate the patented Swim Step feature into the Sea Ray line of boats.

11. On October 1, 2014, Cobalt, through counsel, notified Sea Ray and Brunswick that the swim step feature on Defendants' Sea Ray boats infringed the '880 Patent.

12. Since learning of the '880 Patent in February 2013, Defendants have continued to manufacture, use, offer for sale, and sell boats infringing the '880 Patent, including but not limited to, the SEA RAY 220 SUNDECK, SEA RAY 240 SUNDECK, SEA RAY 270 SUNDECK, and SEA RAY 290 SUNDECK boats, and have expanded their infringing use of Cobalt's patented swim step on to other models.

13. Because of Defendants' willful infringement of the '880 Patent, Cobalt has lost sales to Defendants, and has been and continues to be damaged by Defendants' infringing conduct.

14. As a result of Defendants' infringement of the '880 Patent, Cobalt is entitled to recover at least a reasonable royalty on Defendants' sale of infringing products. The royalty rate that would provide at least adequate compensation to Cobalt for Defendants' infringement of the '880 Patent is $3,750 per unit (the "Reasonable Royalty") sold of the infringing Sea Ray boats. Through December 31, 2016, Defendants sold 1,076 infringing boats, thus entitling Cobalt

damages in the amount of $4,035,000. Cobalt is entitled to an additional Reasonable Royalty on each infringing boat sold after December 31, 2016.

15. Cobalt is entitled to damages of up to three times the amount of its reasonable royalty damages given Defendants' willful infringement of the '880 Patent.

16. Because Cobalt and Defendants are direct competitors and Cobalt generally does not license its patented technology to competitors, Cobalt is entitled to a permanent injunction against Defendants' future sales of infringing products.

17. This case is "exceptional" under 35 U.S.C. § 285, thus entitling Cobalt to recovery of its attorneys' fees and costs.

18. Defendants have not met their burden of proving by clear and convincing evidence that the Asserted Claims of the '880 Patent are anticipated or rendered obvious by any prior art reference cited by Defendants.

**B. Defendants' Contentions:**

1. Defendants manufacture and sell "Sea Ray" branded boats.

2. Some of Defendants' boats are sold with a submersible swim step, and Cobalt accuses Defendants' submersible swim step of infringing claims 2, 4, and 5 of the '880 Patent.

3. In March of 2012, Defendants' engineers began designing and developing their submersible swim step.

4. The submersible swim step was initially developed without knowledge of Cobalt's submersible swim step (hereinafter the "Locking Swim Step").

5. Around the same time, *i.e.*, in the first half of 2012, Defendants' engineers first learned about the existence of Cobalt's Locking Swim Step.

6. When Defendants' engineers later saw a "patent pending" mark on Cobalt's Locking Swim Step at a boat show, they immediately consulted with patent counsel.

7. Defendants' patent counsel monitors competitors' issued patents periodically and learned of the '880 Patent within a few days after it issued. *Id.* at 106:7-107:4.

8. Defendants' patent counsel then notified several of Defendants' engineers working on the submersible swim step about the '880 Patent. That information was passed on to the entire design team.

9. Defendants' engineers reviewed the '880 Patent and continued to communicate with patent counsel as the engineers consciously designed around the '880 Patent's claims.

10. The '880 Patents' claims 2 and 4 require a "spring biased locking mechanism," which this Court construed to mean "a structure that **mechanically locks** a component in place through the use of a spring biased mechanism."

11. The Court similarly construed the term "means for locking," found in claim 5, to have the function of "**mechanically locking** said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position."

12. When Defendants' submersible swim steps were being designed and developed, Defendants avoided testing or considering mechanical locks in order to avoid the locking limitations in the '880 Patent's claims.

13. Defendants' submersible swim steps use a detent and a flexible acetal resin friction disk (sometimes referred to in the record as a "Delrin washer") to hold the submersible swim step underneath the water when it is deployed.

14. The friction disk has a channel cutout, which allows the disk to flex inward when force is applied as the detent is rotated against it.

15. When the detent moves beyond the friction disk, the friction disk flexes back.

16. The size and shape of the friction disk varies slightly among the submersible swim steps depending on boat model but has the same interaction with the detent.

17. In designing submersible swim steps, Defendants consciously avoided using a mechanical lock not only due to Cobalt's patent but also because a mechanical lock requires the use of two hands to deploy and retrieve the swim platform.

18. With Defendants' design, a user can deploy and retrieve the submersible swim step with only one hand by simply pulling on it.

19. Defendants' submersible swim step is moved into and out of the deployed position via force.

20. In some circumstances Defendants' detent and friction disk will release the submersible swim step without user intervention. For example, if the boat is in rough seas or if the step is deployed when the boat starts moving, the force of the water can push the submersible swim step out of its deployed position.

21. Cobalt's expert witness admits that when force is applied on the movable arm of Defendants' submersible swim step, the movable arm will allow the step to move out of the fully deployed position.

22. Named Cobalt inventors Brett Chilcott and Timothy Kaiser testified that Cobalt considered using a detent mechanism when it was developing the idea that led to the '880 Patent, but they did not think it would be strong enough to positively lock the swim step in the deployed position and did not pursue this design. The named inventors did not understand their invention to cover a detent mechanism.

23. Claims 2 and 4 of the '880 Patent also require a step that is "capable of being rotated 180° between a stored position . . . and a deployed position," and similarly Claim 5 requires a step that is "configured to permit rotation of said step 180° from a stored position . . . and a deployed position."

24. Defendants' engineers believe the design of Defendants' submersible swim step avoids infringement of '880 Patent for the additional reason that Defendants' submersible swim steps are not capable of rotating 180°; the submersible swim steps rotate between 172 and 179 degrees with no more than 0.5 degree of variation.

25. Defendants' submersible swim steps were intentionally designed to not rotate 180° because if they were to rotate 180°, due to the way the boats sit in the water, the submersible swim steps would not be horizontal and would cause someone sitting on the steps to feel unstable.

26. There is no evidence in the record that Defendants had Cobalt's Locking Swim Step in their possession, much less disassembled a patented prototype, or used a product or prototype as a blueprint to build the submersible swim steps.

27. Defendants' detent and friction disk structure does not use a spring biased locking mechanism under the Court's construction, which requires a mechanical lock, so Defendants' submersible swim steps cannot literally infringe claims 2 and 4 of the '880 Patent.

28. Defendants' detent and friction disk structure does not contain a means for locking under the Court's claim construction, which requires mechanical locking, so Defendants' submersible swim steps cannot literally infringe claim 5 of the '880 Patent.

29. Defendants' detent and friction disk do not perform the claimed function of "hold[ing] at least one of said moveable arms in a stationary position when said platform is in

said deployed position and releasable to accommodate movement of said platform to said stored position" in substantially the same way to achieve substantially the same result as claims 2 and 4's spring biased locking mechanism, so Defendants' submersible swim steps cannot infringe claims 2 and 4 of the '880 Patent under the doctrine of equivalents.

30. Defendants' detent and friction disk do not "mechanically lock said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position" in substantially the same way to achieve substantially the same result as claim 5's means for locking, so Defendants' submersible swim steps cannot infringe claim 5 of the '880 Patent under the doctrine of equivalents.

31. When Defendants' submersible swim step is moved from the stored position to the deployed position, it rotates between 172 and 179 degrees depending on boat model with no more than a 0.5 degree of variation.

32. Since the brackets that hold the step are laser cut, the amount of rotation is consistent within each model.

33. There is no evidence in the record that any of Defendants' submersible swim steps have ever rotated more than 179.5 degrees, a fact Cobalt's expert witness has admitted.

34. Defendants' submersible swim steps are neither capable of nor configured to rotate 180°, so they cannot literally infringe claims 2, 4, or 5 of the '880 Patent.

35. When Cobalt filed the patent application that matured into the '880 Patent, the independent claims originally claimed the broader concept of movement. In response to a rejection of the claims by the U.S. patent Office, Cobalt amended the claims to cover the narrower concept of capable of or configured to rotate 180°. Therefore, Cobalt made a narrowing amendment during prosecution that surrendered subject matter.

36. Cobalt made the narrowing amendment to distinguish its claims from the Mardikian and Grimaldi references, which the examiner had found to be anticipatory references and/or to render the claims obvious. Therefore, the narrowing amendment was made for reasons related to patentability.

37. The alleged equivalent is Defendants' submersible swim step, which rotates between 172° and 179° with .5° of variation. Cobalt narrowed its claims—which originally included arms movable or rotatable **any** number of degrees between a stored position and a deployed position—to include only moveable arms capable of or configured to **rotate 180°**. Cobalt's original claims would have covered the rotation of 172°-179°, but the asserted claims as issued only cover a rotation of 180°. Therefore, the submersible swim step's alleged equivalent rotation of 172°-179° is within the scope of the surrendered subject matter.

38. There is no evidence in the record to rebut the presumption of total surrender. The rotation of 172°-179° was foreseeable at the time of the application. The rationale underlying the amendment bears more than a tangential relation to the equivalent in question because the prosecution history does not show the reasons for including the strict 180° limitation other than just limiting the claims from a wider range of degrees. There is no evidence in the record that would support an argument that Cobalt could not reasonably be expected to have described the 172°-179° rotation in question.

39. Under the doctrine of prosecution history estoppel, Cobalt is estopped from asserting infringement under a doctrine of equivalents theory as to the 180° terms found in the Asserted Claims

40. There is clear and convincing evidence that the Asserted Claims of the 'cle Patent are anticipated and/or rendered obvious by the following prior art references:

| Ground | Claims | Basis | Prior Art |
|---|---|---|---|
| A | 2, 4 | § 103 | Sundowner (and/or Sundowner Stern Ladder, and/or Sundowner Swim Platform Ladder),<br>Schlecht (or SL Locking Bow Ladder), &<br>Knowledge of One of Skill in the Art |
| B | 2 | § 103 | Sundowner (and/or Sundowner Stern Ladder, and/or Sundowner Swim Platform Ladder),<br>Schlecht (or SL Locking Bow Ladder),<br>Slikkers, &<br>Knowledge of One of Skill in the Art |
| C | 4 | § 103 | Sundowner (and/or Sundowner Stern Ladder, and/or Sundowner Swim Platform Ladder),<br>Schlecht (or SL Locking Bow Ladder),<br>Terry, &<br>Knowledge of One of Skill in the Art |
| D | 2, 4 | § 103 | SL Series (and/or SL Locking Bow Ladder) (or Schlecht) &<br>Knowledge of One of Skill in the Art |
| E | 2 | § 103 | SL Series (and/or SL Locking Bow Ladder) (or Schlecht),<br>Slikkers, &<br>Knowledge of One of Skill in the Art |
| F | 4 | § 103 | SL Series (and/or SL Locking Bow Ladder) (or Schlecht),<br>Terry, &<br>Knowledge of One of Skill in the Art |
| G | 2, 4 | § 103 | Sly (and/or Sly Seat Platform),<br>Sundowner (and/or Sundowner Swim Platform Ladder), &<br>Knowledge of One of Skill in the Art |
| H | 2 | § 103 | Sly (and/or Sly Seat Platform),<br>Sundowner (and/or Sundowner Swim Platform Ladder),<br>Slikkers, &<br>Knowledge of One of Skill in the Art |
| I | 4 | § 103 | Sly (and/or Sly Seat Platform),<br>Sundowner (and/or Sundowner Swim Platform Ladder),<br>Terry &<br>Knowledge of One of Skill in the Art |

| Ground | Claims | Basis | Prior Art |
|---|---|---|---|
| J | 2 | § 103 | Jaramillo,<br>Curi,<br>Slikkers, &<br>Knowledge of One of Skill in the Art |
| K | 4 | § 103 | Jaramillo,<br>Curi,<br>Terry &<br>Knowledge of One of Skill in the Art |
| L | 5 | § 103 | Terry &<br>Knowledge of One of Skill in the Art |
| M | 5 | § 102 | King |
| N | 5 | § 103 | King &<br>Knowledge of One of Skill in the Art |
| O | 5 | § 103 | King,<br>Terry, &<br>Knowledge of One of Skill in the Art |
| P | 5 | § 103 | Sundowner (and/or Sundowner Stern Ladder, and/or Sundowner Swim Platform Ladder),<br>SL Series (and/or SL Locking Bow Ladder) (or Schlecht), &<br>Knowledge of One of Skill in the Art |
| Q | 5 | § 103 | Sly (and/or Sly Seat Platform),<br>SL Series (and/or SL Locking Bow Ladder) (or Schlecht), &<br>Knowledge of One of Skill in the Art |

41. There is insufficient record evidence to find that Cobalt has ever lost any sales to Defendants due to Defendants' submersible swim step.

42. There is insufficient record evidence to find that Cobalt's Locking Swim Step has been commercially successful. The market share numbers Cobalt relies on offer no insight into the success of the feature because all witnesses have testified that many features help to sell boats, and there are more than two competitors in the market, so if Cobalt loses a sale, it may lose it to other competitors whose boats lack a submersible swim step. Cobalt's expert admitted

during his deposition that he does not rely on market share numbers to analyze whether the Locking Swim Step drives demand of Cobalt's boats and he has seen no evidence that Defendants' submersible swim step drives demand for Defendants' boats. Further, out of 9,748 customer survey results, only about 13 customers complemented the Locking Swim Step, while more than twice as many criticized the design or complained about it. Cobalt's statement that 25-33% its sales of boats with the Locking Swim Step are attributable directly to the Locking Swim Step is not grounded in any evidence cited in Cobalt's interrogatory response regarding damages, nor is it supported by any reliable evidence of record.

43. From 2009 through 2015, a market competitor of Cobalt and Sea Ray that does not offer a Swim Step feature, Regal, increased its market share 5.97%.

44. From 2009 through 2015, a market competitor of Cobalt and Sea Ray that does not offer a Swim Step feature, Formula, increased its market share 2.0%.

45. From 2014 to 2015, Cobalt sold 172 fewer stern drive 20-36' boats, Sea Ray sold 48 more stern drive 20-36' boats, Regal, which does not offer a Swim Step feature, sold 142 more stern drive 20-36' boats, and Formula, which does not offer a Swim Step feature sold 29 stern drive 20-36' boats.

46. If the jury were to find infringement, Cobalt would be entitled to recover a reasonable royalty on Defendants' sale of infringing products. The royalty rate that would provide appropriate compensation to Cobalt is between $168 and $229 per unit (the "Reasonable Royalty") sold of the submersible swim steps with total royalty damages ranging from $180,768 to $246,404.105 through December 2016.

47. Even if the jury were to find infringement of any valid claim, Cobalt is not entitled to willful infringement damages because Defendants' alleged infringement of the '880

Patent is not willful in view of *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

48. This case is not "exceptional" under 35 U.S.C. § 285; thus even if the jury were to find infringement of any valid claim, Cobalt to recovery of its attorneys' fees and costs.

49. Because monetary damages would suffice, even if the jury were to find infringement of any valid claim, Cobalt is not entitled to a permanent injunction against Defendants' future sales of infringing products.

## VI. THE TRIABLE ISSUES AS CONTENDED BY EACH PARTY

**Cobalt:**

1. Whether Brunswick and/or Sea Ray literally infringed claim(s) 2, 4 and/or 5 of the '880 Patent;

2. Whether Brunswick and/or Sea Ray infringed claim(s) 2, 4 and/or 5 of the '880 Patent under the doctrine of equivalents;

3. Whether Brunswick and/or Sea Ray willfully infringed claim(s) 2, 4 and/or 5 of the '880 Patent;

4. The amount of damages that should be awarded to Cobalt due to Brunswick's and/or Sea Ray's infringement of the '880 Patent;

5. The amount of damages that should be awarded to Cobalt due to Brunswick's and/or Sea Ray' willful infringement of the '880 Patent;

6. Whether any of the asserted claims 2, 4, or 5 of the '880 Patent are invalid by reason of 35 U.S.C. §102 (anticipation) and/or 35 U.S.C. §103 (obviousness);

**Defendants:**

1. Whether any of the asserted claims 2, 4, or 5 of the '880 Patent are invalid under 35 U.S.C. §102 (anticipation) and/or 35 U.S.C. §103 (obviousness);

2. Whether there is sufficient evidence to establish that Brunswick and/or Sea Ray literally infringed claims 2, 4 and 5 of the '880 Patent;

3. Whether there is sufficient evidence to establish Brunswick and/or Sea Ray infringe claims 2, 4 and 5 of the '880 Patent under the doctrine of equivalents;

4. Whether the doctrine of prosecution history estoppel prevents Cobalt from asserting a doctrine of equivalents argument as to the 180° claim terms;

5. Whether there is sufficient evidence to establish Brunswick and/or Sea Ray willfully infringed claims 2, 4 and 5 of the '880 Patent;

6. If the jury were to find infringement of the '880 Patent, whether there is sufficient evidence to establish Cobalt is entitled to an award of damages;

7. Whether Cobalt's damages model, premised on the entire market value rule, is admissible;

## 7. Miscellaneous

The parties have agreed to the following motions *in limine*:

1. There will be no reference to either (a) the *inter partes* review (IPR) of the '880 Patent or (b) the appeal of the Final Written Decision of that IPR to the Federal Circuit, in any capacity (e.g. witness testimony, attorney argument, or otherwise). This includes any arguments presented to the PTAB or Federal Circuit by either party, findings of the PTAB, or any mention that certain claims have been held patentable or not patentable/invalid. This does not preclude any party from using statements made during the IPR for cross-examination or witness impeachment.

2. No reference (witness testimony, attorney argument, or otherwise) shall be made to the Hinged Swim Step Product, as defined in Defendants Motion for Summary Judgment for Noninfringement, in any capacity or for any purpose.

3. No reference (witness testimony, attorney argument, or otherwise) shall be made to any discovery issues or disputes between the parties.

4. No expert testimony shall be offered beyond the scope of the expert's reports.

The parties have filed other motions *in limine* on issues for which they could not agree. All of the parties' motions *in limine* have been filed and are fully briefed for the Court's consideration.

Length of Trial: The parties anticipate that seven (7) trial days total will be sufficient.

ENTERED: May 25, 2017

**Henry Coke Morgan, Jr.**
**Senior United States District Judge**

HCM

Respectfully submitted,

Date: May 23, 2017

**COBALT BOATS, LLC**

By: /s/ Robert A. Angle

Robert A. Angle (VSB No. 37691)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
(804) 697-1200 (telephone)
(804) 697-1339 (facsimile)
robert.angle@troutmansanders.com

David M. Gettings (VSB No. 80394)
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone No.: (757) 687-7747
Facsimile No.: (757) 687-1545
david.getttings@troutmansanders.com

STINSON LEONARD STREET LLP
B. Scott Eidson (*pro hac vice*)
Samir R. Mehta (*pro hac vice*)
7700 Forsyth Boulevard, Suite 1100
Saint Louis, Missouri 63105
(314) 863-0800 (telephone)
(314) 259-3924 (facsimile)
scott.eidson@stinson.com
samir.mehta@stinson.com

Penny R. Slicer (*pro hac vice*)
Colin W. Turner (*pro hac vice*)
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
(816) 842-8600 (telephone)
(816) 691-3495 (facsimile)
penny.slicer@stinson.com
colin.turner@stinson.com

*Attorneys for the Plaintiff Cobalt Boats*

**BRUNSWICK CORPORATION and SEA RAY BOATS, INC.**

By: /s/ David M. Morris

David M. Morris (Virginia Bar No. 30146)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
Tel: (202) 739-3000
Fax: (202) 739-3001
E-mail: david.morris@morganlewis.com

Jason C. White (admitted *pro hac vice*)
Scott D. Sherwin (admitted *pro hac vice*)
Michael J. Abernathy (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
77 W. Wacker Drive, Ste. 500
Chicago, IL 60601
Tel: (312) 324-1000
Fax: (312) 324-1001
E-mail: jason.white@morganlewis.com
E-mail: scott.sherwin@morganlewis.com

Julie S. Goldemberg (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: (215) 963-5000
Fax: (215) 963-5001
E-mail: julie.goldemberg@morganlewis.com

*Attorneys for Defendants Sea Ray Boats, Inc. and Brunswick Corporation*