IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

COBALT BOATS, LLC,

    Plaintiff,
v.

    Civil Action No. 2:15cv21

SEA RAY BOATS, INC. &
BRUNSWICK CORP.,

    Defendants.

## OPINION & ORDER

This matter came before the Court pursuant numerous Motions in Limine filed by Plaintiff Cobalt Boats, LLC ("Cobalt" or "Plaintiff") and Defendants Sea Ray Boats, Inc. ("Sea Ray") and Brunswick Corporation ("Brunswick"), (collectively, "Defendants"). Docs. 185, 187, 189, 191, 193, 202. The Court ruled from the bench on several motions, and it now issues this Opinion and Order further explaining its positions and reasoning on all of the motions.

In addition, the Court **DENIES** the Motion for Expedited Briefing on the latest Motion in Limine, Doc. 245, and will consider that Motion as soon as it is ripe. As the Court indicated at the hearing, the venue issue requires more immediate attention than the latest Motion in Limine, and the Court can examine the relevant expert reports and review the Parties' filings according to the regular briefing schedule.

### I.    BACKGROUND[1]

Plaintiff filed this patent infringement action on January 23, 2015, Doc. 1, and filed its Amended Complaint on February 23, 2015, Doc. 9 ("Am. Compl."). This action arises out of the alleged infringement of U.S. Patent No. 8,375,880 ("'880 Patent"), owned by Plaintiff. Am.

---

[1] The Court briefly notes the factual allegations here. For a full review of the factual background, please see the recent Final Pretrial Order, Doc. 278.

Compl. at 1, 4. The U.S. Patent and Trademark Office ("USPTO") issued the '880 Patent to Plaintiff on February 19, 2013 for a "Retractable Step for Boat Swim Platform" ("Swim Step"), which the patent describes as follows:

> A retractable step for use with a boat in water comprising at least one moveable arm pivotally coupled with the boat, a step coupled with the arm such that the step is moveable between a stored position above the water surface and a deployed position below the water surface, and a lock configured to hold the moveable arm in a stationary position when the step is in its deployed position, but is releasable to accommodate movement of the step to its stored position.

Am. Compl., Ex. A at 1. Beginning in 2014, Plaintiff alleges that Defendants, two of its industry competitors, "began promoting and selling boats that include a Swim Step feature described as a 'submersible swim step'," which infringes upon the '880 Patent. Id. at 5. On October 1, 2014, Plaintiff notified Defendants of the alleged infringement, and to date, Plaintiff alleges that Defendants continues to manufacture, use, and sell its version of the Swim Step. Id. at 6. Defendants deny having had knowledge of the '880 Patent prior to October 1, 2014, and they further deny that their products infringe upon the '880 Patient. Answer at 9–10.

On April 16, 2015, Defendants filed a petition for inter partes review ("IPR") with the U.S. Patent and Trademark Office ("USPTO") challenging every claim of the '880 Patent. Doc. 35 at 1. On October 16, 2015, the USPTO instituted IPR of the '880 patent. See Doc. 50, Ex. 1 at 30. The Court granted the Defendants' Motion to Stay, Docs. 39, 50, in an Order dated November 16, 2015. Doc. 63.

On October 6, 2016, Plaintiff notified this Court of the final written decision of PTAB issued on September 28, 2016. Doc. 72. The PTAB found that claims 1, 3, and 6, of the '880 patent are not patentable. Id.; see also Doc. 72, Ex. 1 at 43. Since the Court stayed this action "pending resolution of the IPR petition," Doc 63 at 8, the written decision of PTAB terminated

the stay. Defendants sought another stay pending further appeals of the PTAB decision, Doc. 78, which the Court DENIED, Doc. 161.

On December 14, 2016, the Court conducted a <u>Markman</u> Hearing. Doc. 109. The Court issued its <u>Markman</u> Order on December 21, 2016. Doc. 110. On Motion of the Plaintiff, Doc. 124, the Court also corrected the <u>Markman</u> Order, Doc. 162.

Defendants filed a Motion for Summary Judgment on January 25, 2017. Doc. 115. On April 3, 2017, Defendants filed a Motion for Leave to file a second Motion for Summary Judgment. Doc. 163. The Court DENIED the Motion for Summary Judgment on April 11, 2017. Doc. 169. The Court DENIED the Motion for Leave on May 3, 2017. Doc. 184.

Plaintiff filed a Motion for Summary Judgment on April 28, 2017. Doc. 181. Defendants responded on May 12, 2017. Doc. 206. Plaintiff replied on May 16, 2017. Doc. 211.

The Parties filed the instant Motions in Limine on May 11, 2017. Doc. 185, 187, 189, 191, 193, 202. They responded to each other on May 18, 2017, <u>see</u> Docs. 212–32, and replied in support of their own motions on May 22, 2017, <u>see</u> Docs. 250–69. Trial is set for June 12, 2017. Doc. 81.

## II. LEGAL STANDARDS

The Federal Rules of Evidence broadly allow for relevant evidence to be admitted, subject to certain exceptions. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. However, relevant evidence may be excluded by the Court if "its probative value is substantially outweighed by a danger of one or

3

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Federal Rule of Evidence 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide relevant opinion testimony if the following elements are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The expert testimony must be helpful to the jury. See United States v. Fuertes, 805 F.3d 485, 495 (4th Cir. 2015) ("The district court must exclude expert testimony related to matters which are obviously . . . within the common knowledge of the jurors.") (quoting United States v. Lespier, 725 F.3d 437, 449 (4th Cir. 2013) (internal quotation marks omitted)).

### III. ANALYSIS

**A. Motion Regarding IPR Estoppel (Plaintiff's Motion No. 2)**

*i. Split in Interpretation of Federal Circuit Standard*

As the petitioners in an IPR that reached a final written decision, Defendants are estopped from asserting "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315 (2017). A recent Federal Circuit decision has created conflicting district court opinions regarding the scope of that estoppel. In Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc., an IPR petitioner sought review of the USPTO's decision not to institute IPR on certain grounds, or alternatively, a writ of mandamus ordering reevaluation of that decision. 817 F.3d 1293, 1297–1300 (Fed. Cir. 2016).

The Federal Circuit recognized that there was an underlying estoppel concern, and it stated in dicta that arguments on which the USPTO declines to institute IPR are not estopped by a subsequent written decision. Id. at 1300. The rationale was that noninstituted grounds cannot be raised during the IPR and are thus not estopped. Id. Another panel of the Federal Circuit issued similar dicta citing the same rationale. See HP Inc. v. MPHJ Tech. Inv., LLC, 817 F.3d 1339, 1347 (Fed. Cir. 2016). The Federal Circuit has no holdings affirming this interpretation.

The split in district courts is whether the rationale in Shaw means that grounds not raised in the initial IPR petition are similarly exempt from estoppel. Shaw only addressed noninstituted grounds in the IPR petition, which leaves significant room for interpretation. Courts with a broad reading of Shaw follow its statutory analysis to find that estoppel only applies to grounds that are both in the petition and instituted, which would mean that grounds not raised in the petition at all are similarly exempt from estoppel. See, e.g., Verinata Health, Inc. v. Ariosa Diagnostics, Inc, No. 12cv5501, 2017 WL 235048, at *3 (N.D. Cal. Jan. 19, 2017). Courts with a narrow reading of Shaw have policy concerns that Defendants will preserve patent invalidity arguments from the IPR petition and get two chances to argue invalidity, completely eviscerating the advantages of staying litigation for an IPR petition. See, e.g., Douglas Dynamics, LLC v. Meyer Prod. LLC, No. 14cv886, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017), reconsideration granted in part, No. 14cv886, 2017 WL 2116714 (W.D. Wis. May 15, 2017) (not changing the analysis regarding scope of estoppel). The Parties seek adoption of the respective positions that favor them.

The Court **ADOPTS** the narrow reading of Shaw and **FINDS** that estoppel applies to grounds that the petitioner raised at the IPR itself and could have raised in the IPR petition or at the IPR itself. The court in Shaw was only making observations in dicta, and it had no occasion

to consider restricting estoppel in the manner that other districts have interpreted it. Furthermore, the broad reading of Shaw renders the IPR estoppel provisions essentially meaningless because parties may pursue two rounds of invalidity arguments as long as they carefully craft their IPR petition. It would waste this Court's time to allow a stay for a year during IPR proceedings and then review invalidity arguments that Defendants could (and perhaps should) have raised in their IPR petition. The Court's reading of Shaw gives effect to every word in the statute while also recognizing the effect of the USPTO's decision on an IPR petition.

*ii.   Applying Estoppel*

Defendants offer three additional arguments to escape estoppel. First, they assert that they are arguing invalidity based on a combination of prior art products with other references and that they could only raise prior art patents and printed publications in IPR. Doc. 221 at 3–4. This is technically true based on the wording of the statute. See 35 U.S.C. § 311(b) (2017). The authority they cite is not particularly helpful, as it either shows examples of prior art products unrelated to the patents and printed publications at issue or adopts the broad reading of Shaw. Plaintiff attaches a recent Report & Recommendation from the Eastern District of Texas, which recommends that prior art products are also estopped when they only support arguments that the petitioner could have raised in IPR through the underlying patents or printed publications. Doc. 267 at 4 (citing Id., Ex. A. at 11). The authority is sparse on this issue, and the Court **DEFERS RULING** on the admissibility of references involving prior art products. Defendants may have valid arguments for admissibility on a case for case basis, and the Court cannot decide at this stage whether Defendants are using a tenuous connection to a product to avoid estoppel or have genuine arguments on the evidence.

Second, Defendants assert that the prior art references not disclosed in their IPR petitions were not reasonably available through searching. Doc. 221 at 8–9. In the instant Motion, Plaintiff stated specific searches: "a simple search in Google Patents, restricted by the filing date of the '880 Patent and using the terms (1) 'boat,' 'lock,' and 'ladder,' (2) 'boat,' and 'swim platform,' and (3) 'boat,' 'seat,' 'platform,' 'flat,' and 'rotate' reveals Schlecht, Slikkers, and Sly, respectively, within the top ten search results." Doc. 188 at 8. Plaintiff says that the terms come from the '880 patent and/or the Markman Order. Id. Defendants argue that the Markman Order is not a proper source of key terms for a search. Doc. 221 at 8. Plaintiff suggests in reply that the terms are all in the '880 patent. Doc. 267 at 6. A review of the '880 patent shows that all of those terms are in the patent and that Defendants did not need the Markman Order to determine those key terms. Thus, the Court **FINDS** that Schlecht, Slikkers, and Sly were all reasonably available to Defendants at the time they filed the IPR petition.

Third, Defendants assert that manuals for prior art products are not estopped because they were not reasonably available through searching. Doc. 221 at 8. Plaintiff counters that Defendants' executives knew about the competitor that had the products at issue (Sundowner and SL series), and Plaintiff argues that Defendants' position is disingenuous. Doc. 267 at 5 (citing Doc. 188, Ex. 7 as evidence of Defendants' executives' familiarity). This issue is a credibility issue because the manuals are undoubtedly printed publications, and Defendants' awareness of the manuals is the only question affecting whether these references are estopped. The Court does not believe that Defendants were unaware of a larger competitor's product lines, and thus, the Court **FINDS** that the Sundowner and SL series manuals were reasonably available through searching.

7

Plaintiff does not raise estoppel against the King patent because that ground was in the IPR petition but not instituted, and estoppel does not apply to that reference under any reading of Shaw. Doc. 188 at 6. Plaintiff also does not raise estoppel against the Sly Seat Platform reference, Doc. 267 at 6, challenging only the Sly Patent under estoppel while challenging the platform under a separate Motion, see supra Part III.D. Thus, both the Kind patent and the Sly Seat platform survive estoppel.

The Court **DEFERRED RULING** on this Motion because of the factual issues regarding prior art products. On further review, the Court notes that Defendants only assert prior art products for the admissibility of invalidity grounds A–I and P–Q. Doc. 221 at 6. Because of the Court's findings above, it appears that grounds J, K, L, N, and O only involve references that Defendants could have raised in their IPR petition,[2] and the Court **FINDS** that those grounds are estopped and **GRANTS** the Motion in Limine, Doc. 185, **IN PART** as to those grounds. The Court **DEFERS RULING** on the remainder of the contested grounds.

B.  **Motions Regarding the Meaning of 180° (Plaintiff's Motion No. 4 (Garris portion), Defendants' Motions No. 2, 3, 4, 5, and 10)**

Multiple motions reprise the 180° argument addressed in summary judgment. Plaintiff moves to exclude Defendants' expert testimony on 180° (Plaintiff's Motion No. 4 (Garris portion)), and Defendants move to exclude Plaintiff's expert testimony on 180° (Defendants' Motion No. 2). Defendants make several additional motions: to exclude a doctrine of equivalents argument on 180° (Defendants' Motion No. 3), to exclude "arguments contrary to Federal Circuit patent law" on 180° (Defendants' Motion No. 4), to exclude expert testimony regarding rotation degree of any product that was not measured (Defendants' Motion No. 5), and

---

[2] Ground M involves the King patent, was raised in Defendants' IPR petition, and is admissible based on the Court's reading of Shaw.

to exclude evidence regarding the actual degree of rotation of any Cobalt product (Defendants' Motion No. 10).

The only new evidence is that Defendants have exhibits to demonstrate that their manufacturing variance is only .5°, and they did not have that evidence during summary judgment. Doc. 253 at 2. They argue that prosecution history estoppel applies to bar the 180° doctrine of equivalents argument. Id. The Court recognizes that some authority requires literal reading of numbers, but it also recognizes that there is an open question of whether a person of ordinary skill in the art ("POSITA") would understand the entire phrase in this patent as literal as Defendants read it. Accordingly, the Court will allow both Parties' experts to testify to their respective understandings, and the Court **DENIED** Plaintiff's Motion No. 4, Doc. 191, **IN PART**, denying it as to Charles A. Garris, Jr., and further **DENIED** Defendants' Motion No. 2, Doc. 202. Because two additional Motions require adopting Defendants' position on the 180° issue, and because the Court does not adopt either interpretation, the Court additionally **DENIES** Defendants' Motions No. 3 and 4, Doc. 202. In addition, evidence regarding rotation and related manufacturing tolerances is relevant to a POSITA's understanding of the phrase that uses the term 180° and would assist the trier of fact in determining the disputed understanding of the relevant phrase in the patent. Thus, the Court **DENIED** Defendants' Motion No. 10, Doc. 202, because such evidence is relevant to a POSITA's understanding of the patent.

C. **Motion Regarding Defendants' Communications With Counsel (Plaintiff's Motion No. 1)**

Defendants want to introduce evidence that their engineers talked to counsel, and they want to use such evidence without disclosing the substance of those communications or otherwise waiving privilege. Doc. 215 at 1. They believe that they can introduce such evidence

because Plaintiff elicited that information in depositions without arguing that it waived privilege at that point. Id. at 3–4. Plaintiff seeks to exclude such evidence, arguing that introduction of that evidence would waive privilege and would further unduly prejudice Plaintiff. Doc. 186 at 1.

There are two standards regarding waiver of prejudice, but the Fourth Circuit and the Federal Circuit have not yet adopted either one. The Hearn standard holds that a party waives privilege if (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. See Hearn v. Rhay, 648 F.R.D. 574, 581 (E.D. Wash. 1975). The alternative approach, created by the Third Circuit, finds that "advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Rhone–Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994).

Defendants cite several district court opinions for the proposition that disclosing the fact of communication does not waive privilege. Doc. 215 at 5–6. Plaintiff insists that using the fact of communication in the manner that Defendants intend is contrary to their explicit statement that they are not asserting the advice of counsel defense. Doc. 186 at 2–3. Most of the case law that the Parties cite is not precisely on point, but Plaintiff manages to find one directly addressing these facts. See Canon, Inc. v. Color Imaging, Inc., No. 1:11cv3855, 2016 WL 8578002, at *3–4 (N.D. Ga. Dec. 14, 2016). In that patent infringement action, the court found that specific facts about particular communications would waive privilege. See id. The Court similarly **GRANTS** this Motion in Limine. Defendants' factual contentions outlined as numbers six (6) through nine

10

(9) in their factual contentions in the Final Pretrial Order inevitably create the inference that counsel told engineers or other similar witnesses that their actions were legal. That inference is the advice of counsel defense. Because Defendants do not wish to assert the defense and waive privilege, they cannot introduce evidence that their witnesses consulted counsel. Such evidence would waive privilege, and it would further unfairly prejudice Plaintiff under Rule 403 because its probative value is largely limited to creating an inference regarding advice of counsel. The fact that Plaintiff induced these disputed responses in depositions does not change the analysis regarding their admissibility at trial, as not everything produced in discovery is admissible at trial.

### D. Motion Regarding the Sly Seat Platform (Plaintiff's Motion No. 3)

Plaintiff seeks to exclude the Sly Seat Platform for three reasons: because Defendants untimely disclosed Paul Sly as a witness, because the evidence regarding public use is limited and uncorroborated, and because the evidence does not show enabling. See generally Doc. 190. Defendants first identified the Sly Seat Platform as prior art in an expert report by Charles A. Garris, Jr. on March 14, 2017. Id. at 1–2. The expert's discussion of public use relied on a March 6, 2017 e-mail from Paul Sly attaching a few undated photos. Id. at 3–4. Defendants did not directly disclose Paul Sly as a potential witness until May 8, 2017. Id. at 5–6. Garris also noted in his reply brief that he was asked to assume the public availability of the Sly Seat Platform and that he has not offered any opinion on that issue. Id. at 6–7.

The Federal Circuit has not conclusively opined whether a non-party inventor's evidence regarding his own patent requires corroboration for invalidation. Another court in this District resolved the Federal Circuit case law by finding that corroboration is not required for testimonial and documentary evidence when the non-party inventor has no interest in the case but is required

for testimonial evidence alone. See Netscape Commc'ns Corp. v. ValueClick, Inc., 704 F. Supp. 2d 544, 553 (E.D. Va. 2010).

Here, the only documentary evidence is the undated photos attached to Paul Sly's e-mail. Defendants attempt to remedy the hearsay and credibility problems by attaching a new affidavit from Paul Sly to their opposition to this Motion. See Doc. 213, Ex. A. He asserts that the photos are kept in the regular course of his business. Id. Plaintiff observes that he never clarifies what his business is, and they further observe that he still does not state whether the photos are even in the United States, let alone when and where they were taken or other relevant facts. Doc. 268 at 2. Defendants argue that the patent application is corroborating evidence. Doc. 213 at 6.

This evidence appears highly suspect, especially since Paul Sly himself will apparently not be a witness at trial. Doc. 268 at 1. Defendants cannot prove public use through these undated photos, which would be subject to a variety of admissibility problems at this point. See, e.g., Fed. R. Evid. 901. The Court **DEFERRED RULING** on this Motion because it lacks sufficient information to know for certain whether these photos are credible and admissible, much less whether the platform qualifies as prior art, but it observed that Defendants could not admit the evidence with their current lack of information regarding the photos.

D.  **Motion To Exclude Certain Improper Testimony of W. Todd Schoettelkotte**
    **(Plaintiff's Motion No. 4 – Schoettelkotte portion)**

Schoettelkotte included an argument in his report that Plaintiff's damages expert's report does not meet the Federal Circuit's requirements for using the entire market value rule. Defendants argue that he is providing an assessment of how that law applies to the facts in this case. Doc. 212 at 2. Plaintiff argues that he is essentially making a Daubert motion against its damages expert, Mr. Hoffman, and that he does not have the legal qualifications to make such an

argument. Doc. 266 at 2–3. Defendants raised the entire market value rule issue directly on their own Daubert motion, Doc. 239, which means that the Court will decide the issue directly, and presumably Schoettelkotte will not offer such testimony as a result. Thus, the Court **DEFERRED RULING** on this Motion, Doc. 191 (Schoettelkotte portion) because it may be moot.

E.  **Motion Regarding Commercial Embodiment of the '880 Patent (Plaintiff's Motion No. 5)**

Plaintiff argues that Defendants cannot compare their products to Plaintiff's commercial embodiment of the '880 patent for purposes of proving non-infringement. Doc. 194 at 1. Defendants assert that because commercial embodiments can be relevant to infringement analysis, they can also be relevant to non-infringement analysis. Doc. 214 at 2. They further insist that such evidence is appropriate because Plaintiff's expert relies on commercial embodiments for secondary considerations of non-obviousness. Id. at 3. Plaintiff replies that commercial embodiments are not appropriate to prove non-infringement because a patent can encompass more than the commercial embodiment. Doc. 265 at 2. They acknowledge that commercial embodiments are relevant to secondary considerations, though. Id. at 3.

Plaintiff allegedly wants to avoid jury confusion on the standard for infringement. The Court **DEFERS RULING** on this Motion, Doc. 193, as this issue will be addressed if Defendants tend to confuse the jury.

F.  **Motion Regarding Evidence Beyond Fact Discovery (Defendants' Motion No. 1)**

This Motion appears moot ab initio. Plaintiff argues it cannot determine what Defendants are trying to exclude. Doc. 223 at 1. Defendants merely cite topics that are the issues of other

13

Motions in Limine. Doc. 250 at 1–2. Defendants are free to raise this objection when appropriate without attempting to assert it in this generic manner.

G.   **Motion Regarding Licensing Interests (Defendants' Motion No. 6)**

Plaintiff's damages expert considers licensing interests, offers, and negotiations in his assessment of damages, and Defendants move to exclude that evidence. Doc. 203 at 12–13. Other Districts have apparently ruled both ways on this issue, and the Federal Circuit arguably has no precedent on point. The Federal Circuit once affirmed that such evidence is "of little or no probative value" and that even errant exclusion of such evidence was harmless. See Deere & Co. v. Int'l Harvester Co., 710 F.2d 1551, 1558 (Fed. Cir. 1983). It has no per se rule against such evidence, though. Thus, the Court **DEFERS RULING** on this issue because it can address the issue if such evidence is proffered and consider relevant objections on a question-by-question basis.

H.   **Motion Regarding Expert Damages Testimony from Mr. Wallisch (Defendants' Motion No. 7)**

William Wallisch is the CFO of Cobalt, and he offered an opinion on what portion of sales occur because of the utilization of the swim step at issue in this case. Doc. 230 at 5. Defendants want to exclude any of his numbers regarding damages as impermissible expert testimony when he is only a 30(b)(6) and a fact witness. Doc. 203 at 13–14. They also seek to exclude the evidence under Rule 403 because it lacks sufficient foundation. Id.

The true underlying question is whether Wallisch has any foundation for his numbers from his experience and observations as an officer of the company. An officer of a company may testify as a lay witness regarding the particularized knowledge he has based on his position as an officer. Fed. R. Evid. 701 advisory committee's note to 2000 amendment. If he does not

14

have any foundation for his knowledge and it is just a guess, then it may be impermissible expert testimony (or merely inadmissible testimony outright). Thus, the Court **DEFERRED RULING** on this Motion and will assess the evidence at trial.

### I. Motion Regarding Secondary Considerations (Defendants' Motion No. 8)

Defendants seek to exclude evidence of secondary considerations of non-obviousness. Doc. 203 at 14. The standard for introducing such evidence is that the party seeking introduction must demonstrate a "nexus" between the patent and the secondary consideration in evidence. See Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311–12 (Fed. Cir. 2006). As Plaintiff notes, any relevant secondary considerations must be considered. Doc. 227 at 3 (citing Wyers v. Master Lock Co., 616 F.3d 1231, 1237 (Fed. Cir. 2010)).

The evidence at issue covers multiple categories: any copying by Defendants, commercial success due to the swim step, licensing inquiries, industry praise, long-felt need, and failure of others to meet the need. See generally Doc. 203. The Court can assess the sufficiency of the nexus when Plaintiff seeks to introduce secondary considerations. Plaintiff appears to have better evidence in some categories than others, and there is insufficient evidence to grant a wholesale ruling through this Motion. Thus, the Court **DEFERS RULING** on this Motion.

### J. Motion Regarding New Evidence of Willfulness (Defendants' Motion No. 9)

Defendants argued at the hearing that Plaintiff's second supplemental response to interrogatory 3 fails to disclose their theories of willfulness. Plaintiff responded by quoting the part of the response that it alleges is sufficient and noting that it only intended to use evidence from depositions and from Defendants' production. Plaintiff is not required to answer an interrogatory with a list of specific documents and transcript citations that it intends to use. At the request of Defendants' counsel, the Court DEFERRED RULING on the Motion pending

further examination of the briefing on the Motion. After the hearing, the Court examined the brief and reviewed the interrogatories and answers supplied in the briefing on this Motion, considering their thoroughness. The Court **FINDS** that the answers sufficiently disclose Plaintiff's theory of willfulness, and accordingly, the Court **DENIES** Defendants' Ninth Motion in Limine, Doc. 202. Defendants could have filed a Motion to Compel if they were not satisfied with this answer.

## IV. CONCLUSION

The Court **GRANTS** Plaintiff's Motion in Limine No. 1, Doc. 185, **IN PART** as to grounds J, K, L, N, and O, and **DEFERS RULING** on the remainder of that Motion.

The Court **DENIES** Plaintiff's Motion in Limine No. 4, Doc. 191, **IN PART**, denying it as to Charles A. Garris, Jr., and **DEFERS RULING** on the remainder of that Motion.

The Court **DENIES** Defendants' Motions in Limine Nos. 2, 3, 4, 9, and 10, Doc. 202.

The Court **DEFERS RULING** on Plaintiff's Motions in Limine Nos. 2, 3, and 5, Docs. 187, 189, and 193; and Defendants' Motions in Limine Nos. 1, 5, 6, 7, and 8, Doc. 202.

The Court **DENIES** Defendants' Motion to Expedite, Doc. 245.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 5, 2017