**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

FILED

OCT 3 1 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**COBALT BOATS, LLC,**

**Plaintiff,**

v.                                                            **Civil Action No. 2:15cv21**

**BRUNSWICK CORP.,**

**Defendant.**

## <u>OPINION & ORDER</u>

This matter came before the Court pursuant to Plaintiff Cobalt Boats, LLC's ("Cobalt's")

five (5) post-trial motions: (1) Motion to Amend Judgment to Include Supplemental Damages,

Doc. 358 ("Motion for Supplemental Damages"); (2) Motion for Prejudgment Interest, Post-

judgment Interest, and Damages for Continuing Infringement, Doc. 364 ("Motion for Interest

and a Continuing Royalty"); (3) Motion for Enhanced Damages Pursuant to 35 U.S.C. § 284,

Doc. 370 ("Motion for Enhanced Damages"); (4) Motion for Attorneys' Fees, Doc. 368; and (5)

Motion for a Permanent Injunction Against Defendant Brunswick Corporation ("Brunswick"),

Doc. 366 ("Motion for a Permanent Injunction"). On August 10, 2017, the Court heard

arguments on these Motions. For the reasons stated herein, the Court **GRANTS** the Motion for

Supplemental Damages; **GRANTS** prejudgment interest at the prime rate, compounded

quarterly, from November 19, 2015 through June 23, 2017; **GRANTS** post-judgment interest in

accordance with 28 U.S.C. § 1961(a); **GRANTS** a separate judgment for $257,500 which grants

a royalty of $2,500 per unit for the one hundred and three (103) infringing boats after the jury

verdict; **GRANTS** enhanced damages of a factor of 1.5 times compensatory damages; **GRANTS**

the Motion for Attorneys' Fees; and **GRANTS** the Motion for a Permanent Injunction.

## I. BACKGROUND[1]

The Court held an eight (8) day trial in this matter between June 12, 2017 and June 21, 2017. See Docs. 317–337. The jury returned a verdict that Brunswick literally infringed claim 4 of U.S. Patent No. 8,375,880 ("the '880 patent"), infringed claims 4 and 5 of the '880 patent under the doctrine of equivalents, and willfully infringed both of those claims. The jury calculated the reasonable royalty per unit as $2,500, with an award of $2,690,000. Id. The Court entered judgment on June 23, 2017. Doc. 347.

Cobalt timely filed its post-trial Motions on July 21, 2017. Docs. 358, 364, 366, 368, 370.[2] The Parties filed a Joint Motion for Extension of Time to extend the deadline for responses and replies on the Motion for a Permanent Injunction. Doc. 377. The Court GRANTED the Motion and extended the deadlines until August 11, 2017 for a response and August 21, 2017 for a reply. Doc. 379. Brunswick responded to the other four (4) Motions on August 4, 2017. Docs. 380–83. Cobalt replied on August 10, 2017. Docs. 385–89. Brunswick responded to the Motion for a Permanent Injunction on August 11, 2017. Doc. 394. Cobalt replied in support of the Motion for a Permanent Injunction on August 21, 2017. Doc. 401. The Court ORDERED further necessary information from Brunswick on August 31, 2017. Doc. 406. Brunswick responded with an affidavit on September 29, 2017. Doc. 408.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) allows the Court "to alter or amend a judgment" if a motion is filed within twenty-eight (28) days after entry. Fed. R. Civ. P. 59(e). Federal Rule of Civil Procedure 54(d)(2) requires a party seeking attorney's fees to file a motion no later than

---

[1] The Court briefly notes the factual allegations here. For a full review of the factual background and the disputes that were at issue at trial, please see the Final Pretrial Order, Doc. 278.
[2] On July 7, 2017, the Court GRANTED an extension on the Motion for Attorney's Fees until the same date as the other post-trial motions. Doc. 352.

fourteen (14) days after the entry of judgment, unless a statute or court order provides otherwise. Fed. R. Civ. P. 54(d)(2).

## III.    ANALYSIS

### A.    Motion for Supplemental Damages

Cobalt sought in this Motion to add two hundred and sixty (260) boats to the final judgment as the agreed number of boats with infringing swim steps that Brunswick sold from January 1, 2017 through June 23, 2017. Doc. 359 at 4. Brunswick reserved its opposition to the judgment in general but otherwise did not oppose this Motion. Doc. 380 at 1. Accordingly, the Court **GRANTS** the Motion for Supplemental Damages and added two hundred and sixty (260) boats to the final judgment, resulting in a final judgment of **one thousand three hundred thirty six (1336) boats with infringing swim steps** and **$3,340,000** in compensatory damages when applying the jury's $2,500 royalty rate.

### B.    Motion for Interest and a Continuing Royalty

Cobalt sought prejudgment interest, post-judgment interest, and damages for continued infringement after the entry of judgment. Doc. 364. Cobalt sought prejudgment interest at the prime rate, compounded quarterly; post-judgment interest at the statutory rate; and a continuing royalty of $3,125 for any post-judgment infringing sales. Doc. 365 at 1. Brunswick reserved its opposition to the judgment in general, agreed that interest and continued damages are appropriate, and raised three (3) disputes regarding Cobalt's precise terms. Doc. 381 at 1–7.

#### i.    Rate for Prejudgment Interest

The first dispute between the Parties concerned the appropriate interest rate for prejudgment interest. Cobalt sought the prime rate of interest for sales between April 2014 and June 23, 2017. Doc. 365 at 4. Brunswick argued that Cobalt must justify an award of the prime

rate, has not provided any such justification, and as a result, was only entitled to the 52-week Treasury bill rate. Doc. 381 at 1–2. It further asserted that the 52-week Treasury bill rate "more accurately reflects what the patentee would have earned on any royalties." Id. at 3. Cobalt replied to note that the Federal Circuit does not apply any test for eligibility for the prime rate and that this District has never followed the other districts that apply such a test. Doc. 385 at 2–3. It defended its request for the prime rate by quoting the rationale for such an award in this District: "[the] prime rate best compensates a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time." Morpho Detection, Inc. v. Smiths Detection, Inc., No. 2:11cv498, 2013 WL 5701522 at *1 (E.D. Va. Oct. 17, 2013).

"The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court." Bio–Rad Laboratories, Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986) (citations omitted). The court must exercise such discretion "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." Id. at 967 (quoting General Motors Corp. v. Devex Corp., 461 U.S. 648, 655–56 (1983)). Cobalt correctly observes that the Federal Circuit does not require any test before a patentee may receive pre-judgment interest at the prime rate, and this District's opinion in Morpho Detection is persuasive as to why this Court should award the prime rate rather than following other districts that have created a test for it. Thus, the Court **GRANTS** pre-judgment interest at the prime rate. The Court also observed that an award of interest for the entire infringement period would overcompensate Cobalt because the infringing sales occurred over

time, not all at the beginning of the infringement period. Because the Parties specified that April 2014 was the start of infringement, the Court selects the middle of the month, April 15, for a starting point, and calculates the date halfway between April 15, 2014, and the judgment date of June 23, 2017. Accordingly, the Court **GRANTS** prejudgment interest calculated **starting November 19, 2015** and ending on June 23, 2017 in order to recognize that damages were diffuse throughout the period.

Brunswick also raised a conditional objection, arguing that prejudgment interest is not appropriate if the Court awards enhanced damages. Doc. 381 at 4. It contended that enhanced damages would adequately compensate Cobalt and that any prejudgment interest beyond that would be punitive. Id. Cobalt observed in reply that this District has previously awarded prejudgment interest limited to compensatory damages. Doc. 385 at 4 (citing NTP, Inc., 270 F. Supp. 2d at 762–63). Because the Parties appear in agreement on the typical practice, the Court **GRANTS** prejudgment interest limited to the compensatory damages.

ii.     *Frequency of Compounding for Prejudgment Interest*

The second dispute between the Parties concerned the frequency of compounding of prejudgment interest. Cobalt sought interest compounded quarterly, citing several examples of such an award in this District. Doc. 365 at 3–4. Brunswick did not dispute that compounding is appropriate, but it argued that Cobalt must prove its entitlement to compounding that is quarterly rather than annual. Doc. 381 at 3–4. Cobalt replies to note that no authority in this District has ever required some showing to obtain quarterly compounding. Doc. 385 at 3.

Because both Parties are arguing for a different default frequency of compounding, neither offers much analysis regarding why their preferred frequency is appropriate here. It appears that courts in this District routinely grant quarterly compounding in patent infringement

cases. See, e.g., Morpho Detection, Inc., 2013 WL 5701522, at *1; I/P Engine, Inc. v. AOL Inc., No. 2:11cv512, 2013 WL 3991472, at *4 (E.D. Va. Aug. 1, 2013); ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., No. 2:10cv248, 2011 WL 4899922, at *6 (E.D. Va. Oct. 14, 2011). Brunswick's authority to the contrary only demonstrates that other districts default to annual compounding in patent infringement cases. See Doc. 381 at 3–4 (citing Kaneka Corporation v. SKC Kolon PI, Inc., No. 11cv3397, 2016 WL 4150756, at *28 (C.D. Cal. 2016), among others). Given the sparse analysis on either side of this issue, there is little reason to depart from this District's apparent general practice. Thus, the Court **GRANTS** pre-judgment interest compounding quarterly.

### iii.    Royalty for Continuing Damages

The third and final dispute between the Parties on this Motion concerned the appropriate royalty for continuing damages. Cobalt sought a royalty for any post-judgment sales, acknowledging that entry of an injunction may curtail much of the need for such a royalty. Doc. 365 at 5. Specifically, it requested $3,125 per unit, which is halfway between the jury's royalty in this case and Cobalt's requested royalty. Id. at 5. It cites Amando v. Microsoft Corp., 517 F.3d 1353, 1361–62 & n.2 (Fed. Cir. 2008) for the proposition that a reasonable royalty is higher after a judgment of infringement. Id. at 6. Brunswick responded to note that Amando does not require a higher royalty for post-judgment infringement and to assert that its possibility of winning on appeal balances out any advantage from the judgment in what constitutes a reasonable royalty. Doc. 381 at 4–5. It asserted that a royalty no higher than the jury's royalty would be appropriate. Id. at 5–6. Cobalt contended in reply that the reasonable royalty should be higher than the jury's award at a minimum, and it continues to insist that a higher royalty is appropriate, especially since Brunswick is a willful infringer. Doc. 385 at 4–6.

The Court **FOUND** at the hearing that the jury's royalty adequately compensates Cobalt for any post-judgment sales and **GRANTS** a continuing royalty of $2,500. After the briefing on this Motion, Brunswick's final calculation was that it produced one thousand four hundred and thirty nine (1439) boats with infringing swim steps before it ceased production. See Doc. 408. This represents an increase of one hundred and three (103) boats with infringing swim steps over the final judgment number. Accordingly, Cobalt's final amount of continuing royalties is **$257,500** for the one hundred and three (103) additional boats with infringing swim steps.

### iv.    Conclusion

The Court **GRANTS** the Motion for Interest and a Continuing Royalty with prejudgment interest at the prime rate, compounded quarterly, for compensatory damages from November 19, 2015 through June 23, 2017, post-judgment interest in accordance with 28 U.S.C. § 1961(a), and a continuing royalty of $2,500 on the post-judgment infringing products for a total of $257,500. The Court will enter separate judgment for the $257,500, with post-judgment interest at the statutory rate. Since the date of these additional sales was not established as significantly before the judgment date, the Court is not awarding prejudgment interest on these sales.

## C.    Motion for Enhanced Damages

Upon a finding of willful infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (2017). Enhanced damages are in the court's discretion, and "courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount." Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S. Ct. 1923, 1933 (2016). "When deciding how much to award in enhanced damages, district courts often apply the non-exclusive factors articulated in Read Corp. v. Portec, Inc., 970 F.2d 816 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v.

Westview Instruments, Inc., 517 U.S. 370 (1996)." Georgetown Rail Equip. Co. v. Holland L.P., No. 16-2297, --- F.3d ----, 2017 WL 3499240, at *10 (Fed. Cir. Aug. 1, 2017) (citing i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 858–59 (Fed. Cir. 2010); Innovention Toys, LLC v. MGA Entm't, Inc., 667 F. App'x 992, 993 (Fed. Cir. 2016)).

Before examining the Read factors, the Parties discuss a preliminary argument about whether the jury's finding is "advisory." See Doc. 382 at 5–6. Brunswick cobbles together a few unreported trademark cases labeling jury findings of willfulness as advisory and invites this Court to use the same terminology in this patent case because the Court is not obligated to grant enhanced damages in a patent case. See id. Cobalt protests that the Federal Circuit has not approved of such a treatment of jury findings in patent cases. Doc. 388 at 3–4. It also observes in its opening brief that the Federal Circuit requires courts to adequately explain their reasons for not granting enhanced damages when a jury found willfulness. Doc. 371 at 16 (citing Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996)). The argument that the Court could simply deny enhanced damages by labeling the verdict as advisory seems to go beyond current authority. See Jurgens, 80 F.3d at 1566. This argument is moot since the Court agrees with the jury's finding and **FINDS** that Brunswick's infringement was willful based on five (5) factors: Brunswick's denial of knowledge of the relevant patent in its initial Answer, Brunswick's prior attempts at designing a heavy step in order to avoid the patent, Brunswick's failure to provide any dictionary or learned treatise or authority beyond the testimony of its expert in support of its position that its mechanism was not a lock, Brunswick's transparently false explanations for its design, and Brunswick's deceptive presentation of dealer witness testimony upon the swim

step's usefulness and value.[3]  The court's finding renders this advisory finding argument **MOOT**.

In addition, Brunswick asserted in its briefs that the jury's royalty adequately compensates Cobalt and that the Court should decline enhanced damages on that basis.  Doc. 382 at 29.  It cited example cases where courts mentioned the jury's high award as part of their reason for not awarding enhanced damages.  See id.  Cobalt observed in reply that all of Brunswick's cited cases on this issue also involved other reasons why the Court did not award enhanced damages.  Doc. 388 at 18.  Brunswick's argument is not persuasive because enhanced damages are warranted on the facts of this case, as explained below.

When deciding how to exercise its discretion, the Court can obtain helpful guidance from considering the evidence under the nine (9) Read factors.  Those factors are:

> 1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent, investigated the patent and formed a good faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior in the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.

Read, 970 F.2d at 826–27.

    *i.*    *Factor One: Whether Brunswick Deliberately Copied Cobalt's Ideas or Design*

This factor weighs in favor of enhanced damages.  It appears from the record that Brunswick examined the Cobalt patent and step and tried to design something as close as possible, but the evidence indicated that it either copied Cobalt's lock idea intentionally or it redesigned its way back to a lock.  Both sides presented evidence for their respective views, and the jury ultimately found Cobalt's evidence more credible.  The Court agrees that Brunswick willfully infringed.  At least one of Brunswick's explanations about why they developed their

---

[3] The latter two (2) issues are explained more fully below under Read factors one (1) and three (3), respectively.

particular hinge was not credible. See Trial Tr. at 91:2–10 (offering the explanation at issue). If a boat owner drives his boat over a rock, and he manages to pass the entire boat over that rock, the "safety" from a step that pops up when the rock hits it will be of minimal use on his destroyed boat. That explanation sounds like an ex post facto description by Brunswick to avoid a copying charge rather than an actual decision by a Brunswick engineer.[4] Thus, in light of the evidence and the finding of willful infringement, the Court **FINDS** that Factor One favors enhanced damages.

ii. *Factor Two: Whether Brunswick Investigated Cobalt's Patent and Formed a Good Faith Belief That It Was Invalid or That It Was Not Infringed*

This factor weighs in favor of enhanced damages. Brunswick was not willing to assert advice of counsel and waive associated privilege, which means that there is no evidence in the record of any opinion that would support a good faith belief that they did not infringe. Despite lacking that evidence, Brunswick has consistently maintained that its hinge mechanism is not a lock, and it proffered expert testimony that its belief was in good faith, but failed to adequately support such testimony in response to Cobalt's more persuasive evidence. Cobalt is also correct that other evidence indicates that Brunswick designed its final hinge mechanism in a short period of time and did not adequately consider whether it infringed the '880 patent. See Doc. 371 at 21–22. The jury found and the Court concurs that Cobalt's cited evidence is more persuasive on willfulness. As a result, the Court **FINDS** that Factor Two favors enhanced damages.

iii. *Factor Three: Brunswick's Behavior in the Litigation*

There are acts that demonstrate wrongful behavior in this litigation. As one example, the false statement in the original Answer was wrongful behavior because it concerned a key fact:

---

[4] The fact that Brunswick engineer witnesses may have discussed other possible explanations does not alter the fact that Brunswick repeatedly proffered this particular explanation at trial.

whether Brunswick knew about the patent while designing its step. Its counsel remedied the error during discovery, admitting that Brunswick knew about the patent while designing the step. See Doc. 388, Ex. A at 10 ("Brunswick's counsel first became aware of the Patent-in-Suit in late February 2013."). The fact that counsel remedied Brunswick's bad behavior does not alter the reality that false statements in the Answer are not proper litigation behavior. As a second example, Brunswick's misrepresentation about whether it had contact with a prior employee, Urfer, reflects either intentional hiding of witnesses or at least unwillingness to perform a reasonable investigation into what its employees know, neither of which is proper litigation behavior. As a third example, Brunswick offered dealer witnesses to testify to the unpopularity of the swim step without disclosing that both witnesses were from areas where swimming would be less popular, creating a false impression of the value of the witnesses' testimony by omitting a key fact. When the Court raised the issue of swimming in the Chesapeake Bay and its tributaries during the warmer months with the second dealer witness, he mentioned "[s]tinging nettles" without any prompting. Trial Tr. at 1004:14. The second witness clearly knew what Brunswick was omitting. These examples are part of a pattern of misconduct by Brunswick in this case. Accordingly, the Court **FINDS** that the cumulative effect of Brunswick's bad behavior favors enhanced damages.

### iv.    *Factor Four: Brunswick's Size and Financial Condition*

There is no clear standard to determine whether a company that makes $140 million is sufficiently smaller than a company that makes $1.37 billion to tip this factor either way. In addition, other factors could better explore any ill motive by a larger company. Thus, the Court **FINDS** that Factor Four is neutral on the issue of enhanced damages.

### v.    *Factor Five: Closeness of the Case*

As a preliminary observation, MercExchange does not dictate any standard on this factor in this District. See MercExchange, L.L.C. v. eBay, Inc., 275 F. Supp. 2d 695, 720–21 (E.D. Va. 2003). The opinion in that case considered the Court's own ruling on summary judgment as part of this factor, but it did not comment on the relevant standard or whether such consideration was appropriate. See MercExchange, 275 F. Supp. 2d at 720–21.

Cobalt's decision not to seek summary judgment was reasonable. Brunswick's abandoning its invalidity case at trial is of no help in weighing this factor. Because both Parties' arguments are of minimal persuasiveness, the Court **FINDS** that Factor Five is neutral.

### vi.    *Factor Six: Duration of the Misconduct*

No authority gives clear indication of how to measure this factor. The standard in Hynix Semiconductor Inc. v. Rambus Inc., 609 F. Supp. 2d 951, 958–59 (N.D. Cal. 2009), which essentially permits infringement during pending litigation, appears uncommon in analysis under this factor. Also, NTP, Inc. did not explicitly accept either party's duration measurement, rendering it unclear as to whether three (3) years of infringement left this factor neutral. See NTP, Inc., 270 F. Supp. 2d at 759. The facts of this case are particularly egregious, though, because Brunswick expanded use of the allegedly infringing step during the pendency of this litigation. Doc. 371 at 26. Wherever courts should draw the line on duration, a party with multiple years of expanded use of an infringing product undoubtedly crosses the line on acceptable duration of infringement. Thus, the Court **FINDS** that Factor Six favors enhanced damages.

<em>vii.    Factor Seven: Remedial Action by Brunswick</em>

Some case law suggests that enhancement is warranted here when lack of remedial action extends after the jury verdict, but at least one case cited by Cobalt finds enhancement warranted when no pre-verdict remedial action occurred.  <u>See</u> <u>Arctic Cat Inc.</u>, 198 F. Supp. 3d at 1353. Brunswick's remedial action occurred in July, leading to an additional one hundred three (103) infringing boats, and the authority cited by both Parties does not clarify whether remedial action that occurs shortly after the jury verdict is enough to avoid this factor.  Because a lack of pre-verdict remedial action arguably is enough to find that this factor favors enhanced damages, and because Brunswick had a short post-judgment period without remedial action, the Court **FINDS** that Factor Seven slightly favors enhanced damages.

<em>viii.    Factor Eight: Brunswick's Motivation for Harm</em>

As with several of the other <u>Read</u> factors, the standard of measurement under this factor is unclear.  Some courts find that motivation to compete is motivation to harm.  <u>See, e.g.</u>, <u>Parker-Hannifin Corp. v. Wix Filtration Corp.</u>, No. 1:07cv1374, 2011 WL 976559, at \*17 (N.D. Ohio Mar. 17, 2011).  Others disagree, finding that economic motivations are separate from motives to harm.  <u>See, e.g.</u>, <u>Itron, Inc. v. Benghiat</u>, No. 99cv501, 2003 WL 21402608, at \*12 (D. Minn. June 16, 2003).  On the facts of this case, the former rule is the better approach because Brunswick cited Cobalt's success with the swim step as it sought to develop its own.  Thus, the Court **FINDS** that Factor Eight weighs in favor of enhanced damages.

<em>ix.    Factor Nine: Whether Brunswick Attempted to Conceal Its Misconduct</em>

Brunswick certainly concealed the witness Urfer, its patent application, and its knowledge of the Cobalt patent for at least some time period.  However, Brunswick's infringing step was on the market, and its similarity to Cobalt's step was obvious.  Thus, the Court **FINDS**

13

that Brunswick did not clearly engage in concealing of its willful infringement prior to this lawsuit, but did conceal while it was pending, and that this factor is therefore neutral.

*x.    Conclusion*

The Read factors reflect that some enhancement of damages is appropriate in this case, but they do not favor enhancement such that treble damages would be appropriate. Factors One, Two, Three, Six, Seven, and Eight favor enhanced damages, while Factors Four, Five, and Nine are neutral. These factors reflect that the jury's assessment of credibility and ultimate finding of willful infringement, with which the Court concurs, favor enhancement of damages. Accordingly, the Court **GRANTS** the Motion for Enhanced Damages, but with an enhancement of **1.5 times compensatory damages of jury verdict plus $257,500**, because enhanced damages are appropriate but this case is not egregious enough to warrant triple damages.

**D.    Motion for Attorneys' Fees**

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (2017). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). District courts exercise their discretion in light of the totality of the circumstances in determining whether to award fees. Id. Some non-exclusive factors affecting this discretion include "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Id. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)). The plaintiff bears the burden of proving the entitlement to attorneys' fees by

14

a preponderance of the evidence. <u>Bayer CropScience AG v. Dow AgroSciences LLC</u>, 851 F.3d 1302, 1305 (Fed. Cir. 2017) (citations omitted). "Although an attorney fee award is not mandatory when willful infringement has been found, precedent establishes that the court should explain its decision not to award attorney fees." <u>Whitserve, LLC v. Computer Packages, Inc.</u>, 694 F.3d 10, 37–38 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

Cobalt based its request for attorneys' fees on two (2) principal arguments: that the jury found willful infringement and that Brunswick litigated the case in an objectively unreasonable manner. Doc. 369 at 12–18. Brunswick responded with familiar arguments from the enhanced damages briefing, stating that the jury finding is advisory and extensively defending its litigation conduct. Doc. 383 at 4–21. It also rejected a suggestion by Cobalt that Brunswick's increased market share makes this case exceptional, reprising its argument that the step did not affect market share. <u>See</u> <u>id.</u> at 21.

Three (3) issues in particular, in combination with the finding of willful infringement, lead this Court to **FIND** that the instant case is exceptional. First, Brunswick's false statement in the Answer that it did not know about Cobalt's patent until receiving a cease-and-desist letter in October 2014 when it actually knew about the patent in late February 2013 is a serious misrepresentation on a key fact in a patent infringement case, even if Brunswick's attorneys later corrected this misrepresentation. Second, Brunswick's response to Cobalt that it did not have contact information for former employee Jeff Urfer was misleading when its employees were in touch with him. Third, the delay of production of the patent application until near the close of discovery prevented Cobalt from deposing any of the inventors regarding the content of the application. The patent application may not have been dispositive of any particular issue, but it was certainly relevant to how a person of ordinary skill in the art would understand the much-

disputed rotation term, and the delayed production harmed the Parties' ability to develop evidence upon this issue before trial. The delayed deposition of Jeff Urfer also did not remedy the problem from that delay because of Urfer's inability to testify regarding the application although he was named as a co-inventor. There is no question that all of these issues added unnecessary time and expense for Cobalt and unduly impeded the thoroughness and efficiency of discovery.

The Court does not find that it was any action on the part of Brunswick's counsel that contributed to the deficiencies in discovery that made this case exceptional. The misconduct by Brunswick in the handling of these matters was not proper or timely and did adversely affect Cobalt's discovery. Thus, in view of both the willfulness of Brunswick's infringement and the misconduct noted above, the Court **FINDS** that this case is exceptional and further **GRANTS** the Motion for Attorney's Fees.

The familiar lodestar method applies for calculating a reasonable attorney's fee:

> The proper calculation of an attorney's fee award involves a three-step process. First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717–19 (5th Cir. 1974). Id. at 243–44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.

McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013).

### i. *Reasonable Hours*

Cobalt attaches an affidavit attesting to the reasonableness of its counsel's hours for patent litigation, see generally Doc. 369, Ex. O, and Brunswick does not challenge the affidavit with any contrary evidence. Brunswick seeks reduction of Cobalt's hours on three grounds: that

it engaged in impermissible block billing, that it billed attorney travel time at full rates, and that it improperly billed legal research fees. Doc. 383 at 25–27. Cobalt responds that it has already adjusted excessive expenditures from its own bills, noting for example that it cut $39,659.00 from its June 2017 bill and $13,596.50 from its May 2017 bill. Doc. 389 at 16–17. A large source of this reduction is apparently that it does not seek reimbursement for "data processing specialists, e-discovery professionals, or other administrative assistance . . . ." Id. at 17.

On block billing and travel time, the Court sees no impediment to assessing the reasonableness of the fees in most of the bills other than those block bills that incorporate travel time. Furthermore, Cobalt has an uncontested affidavit in support of the reasonableness of its hours. The Court agrees with Brunswick, though, that travel time should not be compensated at the full hourly rate for regular legal services. Brunswick seeks a reduction of at least five (5) percent in attorneys' fees on this ground. See Doc. 383 at 26. From the Court's review of the submitted bills, it appears that cost of travel is included in block bills for Scott Eidson, Colin Turner, Penny Slicer, Samir Mehta, and Amber Saunders, which cumulatively account for almost seven percent (7%) of total billing. The Court also noticed that some of the bills reflected only part of the total travel time and that these hours include blocks of time with significant other activities, such as deposing a witness. See, e.g., Doc. 369, Ex. M at 82. Thus, the Court does believe that Brunswick's requested wholesale five percent (5%) reduction is excessive because it would likely eliminate more than just the billed travel time. The Court does agree that a reduction is appropriate for the counsel and paralegal who block billed travel time, and accordingly, the Court will **GRANT** the five (5) percent reduction in hours requested by Brunswick limited to the attorneys and paralegals listed above.

17

On legal research fees, the Court sees no place where Cobalt requested reimbursement for those fees in the instant Motion for Attorneys' Fees. The exhibits to the Motion mention such fees, but the fees are not otherwise in Cobalt's instant Motion or related briefs. The Court will not grant Cobalt any fees that it did not request.

Thus, the Court **GRANTS** the following reductions: reducing Scott Eidson's hours from 1566.5 to 1488.175, reducing Colin Turner's hours from 1434.5 to 1,362.775 hours, reducing Penny Slicer's hours from 938.9 to 891.955, reducing Samir Mehta's hours from 635.2 to 603.44, and reducing Amber Saunders's hours from 245.4 to 233.13. See Doc. 369 at 19–20 (indicating the original requested hours).

*ii. Reasonable Rates*

"The reasonable hourly rate must be consistent with the market rate in the judicial district in which the trial court sits." Brinn v. Tidewater Transp. Dist. Com'n, 105 F. Supp. 2d 500, 504 (E.D. Va. 2000). To determine the reasonable hourly rate, the Court considers the twelve Johnson factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). "There is no strict manner in applying and considering these factors." Winningear v. City of Norfolk, Va.,

No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (citing <u>Trimper v. City of Norfolk</u>, 846 F. Supp. 1295, 1303 (E.D. Va. 1994)).

Cobalt attaches an affidavit attesting to the reasonableness of its counsel's rates for patent litigation, <u>see generally</u> Doc. 369, Ex. O, and Brunswick does not challenge the reasonableness of those rates. Furthermore, upon review, the hourly rates charged by Cobalt's counsel appear reasonable to the Court. Accordingly, the Court **FINDS** that the requested hourly rates are reasonable.

### iii. *Reducing Fees for Time Spent on Unsuccessful Claims*

After determining the lodestar figure, the "'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 244 (4th Cir. 2009) (citations omitted). Cobalt had one (1) claim for relief, <u>see</u> Doc. 9 ¶¶ 24–33, and they won on that claim, <u>see</u> Docs. 338, 347. Thus, there is no basis for a reduction here.

### iv. *Final Award Based on Degree of Success*

The Court may reduce an award at this step of the analysis if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." <u>McAfee</u>, 738 F.3d at 92 (quoting <u>Hensley</u>, 461 U.S. at 439–40). Thus, where the reasonable hourly rate times the reasonable hours spent leads to an excessive award in light of the actual relief in the litigation, the Court may reduce the fee award. <u>See Hensley</u>, 461 U.S. at 436.

Brunswick invites the Court to reduce Cobalt's fee award by thirty three percent (33%) because Cobalt only obtained two-thirds of its requested royalty and because it only prevailed on proving infringement of some of the patent claims. <u>See</u> Doc. 36 at 28. As Cobalt observes, this District has previously stated that "while the Court must consider Plaintiff's degree of success,

an attorney's fees award is not required to be directly proportional to the amount of damages that the client recovered in the legal action." Doc. 389 at 19 (quoting Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 2017 WL 2113138, at *18 (E.D. Va. 2017)).

This Court disagrees with Brunswick's contention that the requested award is excessive in light of the actual relief. Cobalt prevailed in a multi-year patent infringement case through completion of a multi-week patent trial, obtaining a finding of willful infringement and an award that favored its view of damages over Brunswick's view. In view of Cobalt's high level of success, combined with its uncontested affidavit that the award is reasonable, the Court sees no reason to reduce the award at this step.

*v. Conclusion*

Accounting for the hours reductions noted above, the Court **GRANTS** attorneys' fees in the following amounts:

| First Name | Last Name | Position | Hourly Rate | Total Hours | Total Bill |
|---|---|---|---|---|---|
| Robert | Angle | Partner | $740.00 | 590.3 | $432,317.50 |
| David | Barnard | Partner | $445.00 | 25.3 | $11,258.50 |
| Justin | Barnes | Partner | $730.00 | 2.9 | $2,117.00 |
| Mandi | Blackmon | Staff Attorney | $280.00 | 26.7 | $7,476.00 |
| Jennifer | Bowen | Associate | $315.00 | 21.4 | $6,369.00 |
| Judy | Bradley | Paralegal | $225.00 | 299.9 | $64,667.00 |
| Judith | Carlson | Of Counsel | $510.00 | 2.4 | $1,176.50 |
| Kevin | Conneely | Partner | $575.00 | 26.8 | $15,410.00 |
| Scott | Eidson | Partner | $430.00 | 1488.175 | $639,915.25 |
| Steve | Froelich | Paralegal | $245.00 | 3.2 | $784.00 |
| David | Gettings | Associate | $385.00 | 226.6 | $86,881.00 |
| Stanley | Hammer | Staff Attorney | $310.00 | 28.5 | $8,835.00 |
| Sarah | Jenkins | Paralegal | $100.00 | 2.5 | $250.00 |
| Larry | Joye | Partner | $490.00 | 0.3 | $147.00 |
| Nora | Kane | Of Counsel | $355.00 | 7.3 | $2,591.50 |
| Mark | Kundmueller | Staff Attorney | $280.00 | 15.8 | $4,424.00 |

| L.A. | Kuykendall | Associate | $340.00 | 26.3 | $8,942.00 |
|---|---|---|---|---|---|
| Bryce | Langford | Associate | $260.00 | 1.9 | $494.00 |
| Samir | Mehta | Associate | $305.00 | 603.44 | $184,049.20 |
| Lisa | Parks | Paralegal | $210.00 | 10.2 | $2,065.50 |
| Karen | Russell | Paralegal | $220.00 | 1.3 | $286.00 |
| Amber | Saunders | Paralegal | $180.00 | 233.13 | $41,963.40 |
| Andrew | Scavotto | Partner | $370.00 | 19.9 | $7,363.00 |
| Julie | Scheipeter | Associate | $280.00 | 51.5 | $12,550.00 |
| Aalok | Sharma | Associate | $285.00 | 3.6 | $1,026.00 |
| Cierra | Simpson | Associate | $260.00 | 19.5 | $5,070.00 |
| Penny | Slicer | Partner | $565.00 | 891.955 | $503,954.58 |
| Jana | Stone | Paralegal | $205.00 | 2.6 | $521.00 |
| Colin | Turner | Associate | $295.00 | 1362.775 | $402,018.63 |
| J. Nicci | Warr | Associate | $310.00 | 18.4 | $5,704.00 |
| Benjamin | Woodard | Associate | $225.00 | 8.5 | $1,912.50 |
| Mark | Young | Of Counsel | $385.00 | 0.4 | $154.00 |

In total based on the above calculations, the Court awards **$2,462,693.05** in attorney's fees.

**E.  Motion for a Permanent Injunction**

Both Parties agree that Cobalt bears the burden to meet the four (4) factor test in eBay

Inc. v MercExchange, L.L.C., 547 U.S. 388 (2006).  See Doc. 367 at 1; Doc. 394 at 2.  Those

four (4) factors are:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law,
> such as monetary damages, are inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the plaintiff and defendant, a
> remedy in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

eBay Inc., 547 U.S. at 391 (citing Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313

(1982); Amoco Production Co. v. Gambell, 480 U.S. 531, 542).  The Court in eBay Inc.

observed that categorical grants or denials of injunctions are inappropriate in a patent

infringement case and that a district court must apply those four (4) factors to the facts of the

case at hand.  See id. at 394.

*i.    Irreparable Harm*

Cobalt has established irreparable harm because it established at trial that Brunswick's intentional infringement diverted sales of Cobalt's boats to Brunswick. In addition, the last of the infringing boats are still in some dealers' stock pending further sale to an end user. It will be exceedingly difficult for Cobalt to recapture market share once the shift has already occurred, and this Court cannot take any action to alter market share. Accordingly, the Court **FINDS** that Cobalt has suffered irreparable harm.

In addition to the finding here, a note of correction is necessary regarding Brunswick's repeated false assertion regarding market share evidence in this case. Brunswick denounced the connection as "purported and speculative" and denied the introduction of "any evidence" establishing it. See Doc. 383 at 21. It has made similar remarks throughout much of the post-trial briefing. See, e.g., Doc. 382 at 28 n.6 ("[T]he record does not support the inference that Cobalt's swim step had a recognized negative impact on Brunswick's market share or that Brunswick's swim step allowed the company to return to the number one spot in the market.") That allegation is clearly wrong. Cobalt had an increase in market share when it introduced its swim step, and the increase was plausibly attributable to the swim step because no other aspects of its business or product changed. Trial Tr. at 708:10–17; cf. id. at 648:6–649:4 (indicating that contemporaneous e-mails from Brunswick employees stated that Cobalt was taking its market share). Its market share then decreased when both (1) nothing changed about its own product and (2) Brunswick introduced the infringing step. Id. at 654:19–25. Brunswick did attack the assertion that the market was otherwise flat on cross-examination, obtaining the admission that competitors Regal, Four Winns, and Formula experienced increases during the same time. Id. at 678:16–683:6. The chart used for this cross-examination also indicated that Chapparal

experienced a decrease during the same time that the other three (3) competitors experienced an increase. See Doc. 244-2 at 51. That decrease covers all but a fraction of a percent of the increase in the other competitors. See id. Cobalt's expert did not examine the other increases and decreases because he regarded the market as cumulatively flat, and the jury was free to believe his flat market theory or to believe Brunswick's theory that its increase was from boat redesigns and that Cobalt's decrease was not causally related. Cobalt even went as far as to find a survey with a customer specifically stating that he bought his boat because of the swim step, see Trial Tr. at 1172:8–10, and a survey where a Cobalt customer who considered purchasing a Sea Ray boat specifically wrote that Brunswick should "[a]dd a flip-down swim platform," Pl.'s Ex. 109.[5] There is sufficient evidence to show that the step affects sales, and Brunswick's statement that no evidence supports Cobalt's position is not persuasive.

## ii. *Inadequate Remedy at Law*

Cobalt has established an inadequate remedy at law because monetary damages cannot replace lost market share, which will cause damages for many years beyond simply the profit increases from boat sales. As discussed above, there was sufficient evidence in the record to connect Brunswick's infringement to changes in market share. Thus, the Court **FINDS** that Cobalt has satisfied this factor.

## iii. *Balance of Hardships*

The balance of hardships favors Cobalt. There is minimal risk to either Party if Brunswick has ceased infringing, but Cobalt always faces the risk of designs that are not colorably different from the original design in the absence of an injunction. In contrast,

---

[5] Brunswick's expert also added his own observations regarding further survey evidence and the weight of Cobalt's evidence. See Trial Tr. at 1080:3–1082:4. Of the surveys that mentioned the swim step, about half were positive, and half were negative, see id. at 1105:1–4, although people taking the time to fill out a survey and specifically discuss the swim step was incredibly rare because it did not ask about the swim step, see id. at 1163:12–1165:4.

Brunswick's risk of unreasonable litigation from Cobalt exists regardless of whether an injunction issues, as the presence or lack of an injunction will not restrain Cobalt if it decides to file unwarranted challenges. Thus, on balance, the only possible hardship here is to Cobalt if no injunction issues, and accordingly, the Court **FINDS** that the balance of hardships favors an injunction in Cobalt's favor.

### iv.    Public Interest

This factor favors entry of an injunction. The issue is not whether the injunction supports public interest but whether "the public interest would not be disserved by a permanent injunction." eBay Inc., 547 U.S. at 391. There is always public interest in protecting intellectual property from infringement.

### v.    Conclusion

Because the eBay factors favor an injunction, the Court **FINDS** that a Permanent Injunction is appropriate and will issue one upon the terms stated in this Order.

## IV.    CONCLUSION

The Court **GRANTS** the Motion for Supplemental Damages, Doc. 358, the Motion for Interest and a Continuing Royalty, Doc. 364, and the Motion for Enhanced Damages, Doc. 370. The Court **FINDS** that Brunswick committed one thousand three hundred thirty six (1336) infringing sales before the verdict and one hundred and three (103) infringing sales after the jury verdict. The Court **AWARDS $5,396,250** in total enhanced damages,[6] which applies the jury's royalty rate of $2,500 to all one thousand four hundred and thirty nine (1439) infringing sales and enhances the total by a factor of 1.5.

---

[6] The royalty rate of $2,500 was applied to the post-verdict sales of 103 boats for base damages of $257,500 which amount was enhanced to the factor of 1.5 to arrive at the total amount of enhanced damages.

The Court **AWARDS** prejudgment interest on the $3,340,000 in compensatory damages awarded by the jury verdict without the enhancement for the one thousand three hundred thirty six (1336) sales before the jury verdict. The Court further **AWARDS** such prejudgment interest at the prime rate, compounded quarterly, starting November 19, 2015, a date halfway between the start of sales and the judgment date in order to recognize that sales leading to the damages were diffuse throughout the period, and ending on June 23, 2017.

The Court **AWARDS** post-judgment interest from the date of this Order on the total enhanced damages amount of $5,396,250 in accordance with 28 U.S.C. § 1961(a).

The Court **FINDS** that this case is exceptional and **GRANTS** the Motion for Attorneys' Fees, Doc. 368, in the amount of **$2,462,693.05** with post-judgment interest in accordance with 28 U.S.C. § 1961(a).

The Court **GRANTS** the Motion for a Permanent Injunction, Doc. 366. The terms of the injunction are as follows:

1.      For the remaining term of U.S. Patent No. 8,375,880 ("the '880 Patent"), Defendant Brunswick Corporation and any corporate successors or assignees ("Brunswick"), including its officers, directors, employees, agents, and any one acting in concert or in privity with Brunswick, are hereby enjoined and prevented from:

   A.      Making, selling or offering for sale within the United States any boats that have the swim step found by the jury to infringe the '880 Patent, including specifically swim step as installed upon the following Sea Ray models: 220 Sundeck (220 SDX); 240 Sundeck (240 SDX); 270 Sundeck (270

SDX); 290 Sundeck (290 SDX); 290 SDXO (290 SDX OB); 230 SLX; 230 SPX; 230 SLXW; 310 SLXO (310 SLX OB);

B.  Making, selling or offering for sale within the United States any boats that have the swim step used on Brunswick's Sea Ray 220 and 240 Sundeck models sold before March 2017, in accordance with the Stipulation (ECF No. 315) entered into between the parties prior to trial in this action;

C.  Making, selling or offering for sale within the United States any boats that have a swim step that has a detent locking mechanism (e.g. Delrin Washer/stud detent) included in the hinge mechanism, regardless of the configuration of the detent locking mechanism or material used to create the locking mechanism;

D.  Making, selling or offering for sale within the United States any boats that have a swim step that is no more than a merely colorable variation of the swim step enjoined and described in Paragraphs A–C, above.

2.  The requested permanent injunction is narrowly tailored to permit continued competition between Cobalt and Brunswick, but at the same time to exclude from the boating market the selling of any swim step that constitutes a continuing infringement of the '880 Patent.

3.  The permanent injunction also recognizes the seasonal nature of the boat market and the introduction of successive model year boats. For that reason, the Court will not enjoin the sale of existing models upon which Brunswick has paid a royalty or will pay a royalty upon models existing at the time of this Order.

4. The Court expects that, before pursuing any remedy for contempt under this Order or any modification of this Order, the moving party shall seek a "meet and confer" with the non-moving party to seek non-adjudicated resolution of any future disputes.

5. If Brunswick, after the Effective Date, intends to make or sell or offer for sale any re-designed swim step, Brunswick must, prior to its market introduction, provide Cobalt with sufficient information about the new swim step design to allow Cobalt to determine whether it believes such new swim step design infringes the '880 patent. If the parties cannot agree that the proffered swim step design is not an infringement of claim 4 or claim 5 of the '880 Patent, then the traditional burden to prove contempt of this Order shall remain on Cobalt. If Brunswick does not comply with the obligation to "meet and confer" or does not provide to Cobalt sufficient information regarding any re-designed swim step for Cobalt to evaluate it for infringement of claim 4 or claim 5 of the '880 Patent, the burden to show that the redesigned swim step is not an infringement shall be on Brunswick in any motion for contempt by Cobalt, although Cobalt shall have the ultimate burden of persuasion on all other aspects of its motion for contempt.

6. The parties may, upon Stipulation, seek any mutually-agreed modification of this Order.

7. The Court shall retain jurisdiction after entry of Judgment to interpret, enforce, or modify this permanent injunction and to provide such other and further injunctive, equitable relief that the Court deems just and proper.

The Clerk is **REQUESTED** to send a copy of this Opinion & Order to all counsel of record.

It is so **ORDERED**.

/s/

Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 31, 2017