IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**COBALT BOATS, LLC,**

           **Plaintiff,**

v.                                       Civil Action No. 2:15cv21

**SEA RAY BOATS, INC. &
BRUNSWICK CORP.,**

           **Defendants.**

## OPINION & ORDER

This matter comes before the Court on Cobalt Boats, LLC's ("Plaintiff's" or "Cobalt's") Motion to Show Cause Why Brunswick Corporation Should Not be Held in Contempt of the Court's Permanent Injunction (the "Motion"). Doc. 427. A hearing for this matter took place on November 29, 2018. For the reasons stated below, the Court **DENIES** Plaintiff's Motion.

## I.    BACKGROUND

On June 21, 2017, a jury returned a verdict finding that the swim steps on Brunswick's boats (the "Litigated Design") infringed claims 4 and 5 of Cobalt Boats' '880 Patent. Doc. 338.[1] The jury found that Brunswick the Litigated Design infringed claim 4 of the '880 Patent both literally and under the doctrine of equivalents, and that Defendant had infringed 5 of Plaintiff's '880 Patent under the doctrine of equivalents only. Id. Claim 5 is an independent claim and Claim 4 depends on Claim 1 of the '880 patent. Claims 1, 4, and 5 are reproduced below:

---

[1] The parties also entered into a Stipulation prior to trial that "[t]o the extent that Cobalt prevails and obtains an injunction against Defendants, the injunction will apply equally to the Delrin washer used in the Sea Ray 220 and 240 Sundeck models sold in or before March 2017, and Defendants will not argue that such Delrin washers are outside of the scope of the injunction." Doc. 315 at 2. The Delrin washer used in the Sea Ray 220 and 240 Sundeck models is referred to as the "Stipulated Design."

- **Claim 1:** A retractable step <u>for use with a boat in water</u> comprising: a base having a recess; a pair of stationary arms, each of said arms coupled with said base; a pair of moveable arms, each of said moveable arms coupled with one of said stationary arms; a <u>step having a top side and an underside</u>, said step coupled with said moveable arms and <u>capable of being rotated 180° between a stored position</u> within said recess, wherein said underside is exposed, <u>and a deployed position</u> below the water surface, wherein said top side is exposed; and a <u>spring biased locking mechanism</u> configured to hold at least one of said moveable arms in a stationary position when <u>said platform</u> is in said deployed position and releasable to accommodate movement of <u>said platform</u> to said stored position.
- **Claim 4:** The retractable step of claim 1, wherein said step comprises a material characterized in that it is less dense than water.
- **Claim 5:** A deployable swim step <u>for use with a boat in water</u> comprising: a <u>step having a top side and an underside</u>; <u>means for coupling</u> said step with the boat, said coupling means <u>configured to permit rotation of said step 180° from a stored position</u> above the water surface, wherein said underside is exposed, <u>and a deployed position</u> below the water surface, wherein said top side is exposed; and <u>means for locking</u> said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position.

On July 21, 2018, Plaintiff moved for entry of a permanent injunction to enjoin Defendant from, in relevant part, "[m]aking, selling or offering for sale within the United States" the swim steps that were found to infringe the '880 patent, as well as any swim steps that amounted to "no more than a colorable variation" of those swim steps. Doc. 366 at 1-2. On July 31, 2017, Defendant e-mailed Plaintiff and advised that it was re-designing the swim step (the "Redesign"). Doc. 428-3. Defendant's e-mail attached drawings of the re-designed hinge assemblies and asked for Plaintiff to evaluate the Redesign "vis a vis the '880 Patent." Id. Plaintiff responded on August 2, 2017 and indicated that it would like to see a "3-D model or

2

more comprehensive drawings" and asked to see a "working prototype/sample of hinge assemblies incorporated into a swim step for inspection." Id. Defendant replied on August 9, 2017 and advised that it would provide "additional drawings shortly" and that "a full platform would take additional time" but that it would contact Plaintiff as soon as it could. Id. Defendant also answered other questions about the redesign that were raised in Plaintiff's e-mail. See Doc. 428-3. On October 26, 2017, after obtaining an opinion from an independent counsel that Redesign did not infringe, Defendant sent a physical sample of the Redesign to Plaintiff. Doc. 434 at 9.

On October 31, 2017, the Court entered an Order GRANTING Plaintiff's Motion for entry of a Permanent Injunction, and specifically enjoined Defendant, "including its officers, directors, employees, agents, and anyone acting in concert or in privity with Brunswick" from:

> "[m]aking, selling or offering for sale within the United States [A] any boats that have the swim step found by the jury to infringe the '880 Patent . . . [B] any boats that have a swim step used on Brunswick's Sea Ray 220 and 240 Sundeck models sold before March 2017 . . . [C] any boats that have a swim step that has a detent locking mechanism included in the hinge mechanism, regardless of the configuration of the detent locking mechanism or material used to create the locking mechanism . . . [D] any boats that have a swim step that is no more than a merely colorable variation of the swim step enjoined in Paragraphs A-C, above."

Doc. 412 at 25, 26.

The Court further ordered the parties to "meet and confer" prior to either party pursuing a remedy for contempt, and ordered that:

> If Brunswick, after the Effective Date, intends to make or sell or offer for sale any re-designed swim step, Brunswick must, <u>prior to its market introduction, provide Cobalt with sufficient information about the new swim step design to allow Cobalt to determine whether it believes such new swim step design infringes the '880 Patent.</u> If the parties cannot agree that the proffered swim step design is not an infringement of claim 4 or claim 5 of the '880 Patent, then the traditional burden to prove contempt of this Order shall remain on Cobalt. If Brunswick does not comply with the obligation to "meet and confer" or does not provide Cobalt sufficient information regarding any re-designed swim step for Cobalt to evaluate it for infringement of claim 4 or claim 5 of the '880

3

Patent, the burden to show that the redesigned swim step is not an infringement shall be on Brunswick in any motion for contempt by Cobalt, although Cobalt shall have the ultimate burden of persuasion on all other aspects of its motion for contempt.

Doc. 412 at 27 (emphasis added).[2] Prior to the Court's Permanent Injunction Order, Defendant had already introduced the boats containing the Redesign into the market for sale, and Defendant continued to do so after the Court entered the Order. Doc. 434 at 10. Between December 8, 2017 and March 13, 2018, the parties engaged in several communications to coordinate further inspection of Defendant's Redesign. See Docs 428-3, 428-4, 428-5. On March 20, 2018 and April 11, 2018, Defendant arranged for Plaintiff's Counsel and its expert, Mr. Dyer, to inspect boats both in and out of the water. Doc. 428-1.

## II. PROCEDURAL HISTORY

On May 11, 2018, Cobalt filed the instant Motion and a Joint Motion for Discovery and Agreed Briefing Schedule. Docs. 427, 429. Pursuant to the Agreed briefing schedule, Defendant filed its response in opposition on July 27, 2018. Doc. 434. On August 24, 2018, Plaintiff filed its reply. On September 27, 2018, Defendant filed a Motion for Leave to file a Sur-Reply. Doc. 444. Plaintiff opposed Defendant's Motion for Leave to file a sur-reply on October 8, 2018. Doc. 445. Defendant replied on October 15, 2018. On November 14, 2018, the Court GRANTED Defendant's Motion for Leave to File Sur-Reply and ORDERED Plaintiff to file its Sur-Surreply, if any, on or before November 27, 2018. Doc. 447. On November 15, 2018, Defendant filed its sur-reply. Doc. 449. On November 27, 2018, Plaintiff filed its sur-surreply. Doc. 454. Plaintiff's Motion to Show Cause is now ripe for review.

---

[2] The term "Effective Date" is not defined in the Court's Order.

## III. LEGAL STANDARD

The Court has broad discretion to hold contempt proceedings. Tivo Inc. v. Echostar Corp., 646 F.3d 869, 881 (Fed. Cir. 2011). However, contempt "is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." Id. at 881-882. To show that a party is in contempt of an injunction, "the party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes." Id. at 882.

Whether a newly accused product is "colorably different" from the product found to infringe is an exclusive step and differs from the inquiry of whether the product infringes. See Id. The "colorably different" step focuses on the "differences between the features relied upon to establish infringement and the modified features of the newly accused products" and asks whether any modified features amount to "significant" modifications. Id. In doing so, the court asks, "whether the newly accused product is so different from the product previously found to infringe that it raises 'a fair ground of doubt as to the wrongfulness of the defendant's conduct.'" Id. In examining whether two products are "colorably different", "[t]he analysis must focus . . . on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product." Id; see also Ncube Corp. v. SeaChange Intern. Inc., 732 F.3d 1346, 1351 (Fed. Cir. 2013) ("[T]he colorable-differences standard focuses on how the patentee in fact proved infringement, not what the claims require.").

If the new product is more than colorably different from than the product accused product that was previously alleged to infringe, then the Court need not inquire into whether the newly

5

accused product infringes, and contempt is not appropriate. Id. However, "when a court concludes that there are no more than colorable differences between the adjudged infringing product and modified product, a finding that the newly accused product continues to infringe the relevant claims is additionally essential for a violation of an injunction against infringement." Id. at 883. "The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." Id.

## IV. ANALYSIS
### A. Burden of Proof

Because Defendant delayed in allowing Plaintiff to inspect its Redesign, and because Defendant began selling the Redesign prior to allowing Plaintiff to inspect the Redesign, Plaintiff contends that Defendant violated the "meet and confer" requirement of the Court's Permanent Injunction Order. Therefore, Plaintiff argues that "the burden to show that the Redesign is not an infringement" should be on Defendant. Doc. 428 at 18.

Defendant contends that Plaintiff should have the burden of proof to show, by clear and convincing evidence, that Defendant is in contempt of the Court's Order based on Federal Circuit precedent, and that shifting the burden would constitute "legal error." Doc. 434 at 13 (citing Tivo, 646 F.3d at 883 ("the patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable difference.")); see also Ncube Corp. v. SeaChange Int'l Inc., 732 F.3d 1346, 1349 (Fed. Cir. 2013) ("On a contempt motion, the party seeking to enforce the injunction bears the burden of proving by clear and convincing evidence both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes.") (internal quotations omitted); Lawn Dr., Inc. v. Rizzo, 646 Fed. Appx. 195, 201 (3d Cir. 2016); In re Dunn, 324 B.R. 175, 181 (D. Mass. 2005) ("In effect, the bankruptcy

judge employed a presumption that shifted to the appellants the burden of proving they were not in contempt. This was an error."); Janssen Products, L.P. v. Lupin Ltd., 109 F. Supp. 3d 650, 709 (D.N.J. 2014) ("The Court will not presume that Lupin or Mylan will violate this Court's orders.").

Cobalt has not satisfied the Court that Brunswick failed to comply with the Court's Order that Brunswick provide Cobalt with "sufficient information" prior to marketing the Redesign. Therefore, the Court **RULES** that, the burden of proof remains with Cobalt to show both: 1) that Brunswick's Redesign is no more than "colorably different" than the Litigated Design; and 2) that Brunswick's Redesign infringes claims 4 and 5 of the '880 Patent.

**B. Whether the Redesign is More than Colorably Different**

*i. The Swim Steps*

The parties refer to three different versions of the swim step, the Litigated Design, The Stipulated Design, and the Redesign. The Litigated Design "consisted of a metal stud on the movable arm that interacted with the protrusion on a cantilever spring on the radial edge of the Delrin washer." Doc. 434 at 4. The Stipulated Design "consisted of a metal stud on the movable arm that interacted with a protrusion that purportedly held the step in place and could be compressed to allow the stud to rotate past it." Id. at 5. The Redesign "consists of a metal stud on the movable arm" and a "completely round Delrin washer" with "no protrusion, spring, or cutout" and "metal hinges" that are "secured with a nut and bolt that is tightened against the Delrin washer to create friction, a force that resists the rotation of the movable arm." Id. The Redesign also specifies "the amount of torque to be applied to the bolt that secures the hinge."[3]

---

[3] The amount of torque applied to the Redesigned Swim Step differed regarding some boats sold by Brunswick. The difference in torque resulted in a swim step that floated and did not submerge underwater (i.e. when the hinge was not tightened enough, the step behaved differently than the specification). Defendant's expert, Mr. Taylor initially examined one of these Swim Steps, the "Assembled Swim Steps,"

7

Doc. 428 at 13. A depiction of the three different Delrin washers for each of the designs is reproduced below:



The Litigated Design



The Stipulated Design



The Redesign

As noted above, "[w]here one or more of the elements previously found to infringe has been modified or removed, the court must determine whether that modification is significant." Proveris Scientific Corp., 739 F.3d at 1370–71 (citing TiVo, 646 F.3d at 882). Plaintiff argues that the only differences between the Litigated Design and the Redesign are that "the Delrin washer does not have a cutout or a protrusion to interact with the metal stud," and that Defendant now specifies "the amount of torque applied to the hinge." Doc. 428 at 19. Plaintiff argues that these changes do not prevent the Redesign from performing "substantially the same function in

---

in error. In Defendant's sur-reply, Defendant's expert evaluates the appropriate swim step and still concludes that the Redesign is colorably different from the Litigated Design and does not infringe. See Doc. 448.

substantially the same way with substantially the same result." Id. at 20 (citing Hubbard/Downing, Inc. v. Kevin Heath Enterprises, 2013 WL 12239523, at *14 (N.D. Ga. May 30, 2013)). Plaintiff also argues that the Court's injunction order "explicitly applies to designs of the Infringing Swim Step that have no cutout" because the Stipulated Design, which has no cutout, became part of the litigation through the stipulation. Doc. 426 at 20. Plaintiff also points to its expert's review of the Redesign, and his determination that the Redesign "is nearly identical in size, dimensions, and disk-like shape as the second configuration of Delrin washers of the [Litigated Design], save for the absence of the small protrusion." Doc. 426 at 20.

Defendant contests the meaning of the parties' previous stipulation. Defendant contends that it did not stipulate that the Stipulated Design infringed Plaintiff's patent. Doc. 434 at 15. Instead, Defendant contends that it only stipulated that "it would not challenge the injunction as to that exact design." Id (emphasis in original) (citing Doc. 315 at ¶ 7). Further, Defendant argues that the relevant inquiry is not the difference between the Stipulated Design and the Redesign, but the difference between what was found to be infringing at trial and the redesign. Doc. 434 at 15; see also Tivo, 646 F.3d at 882 ("[t]he analysis must focus on . . . on those aspects of the accused product that were previously alleged to be, and were a basis for, the prior finding of infringement, and the modified features of the newly accused product."); Ncube 732 F.3d at 1351.

Defendant highlights that at trial Plaintiff "told the jury that the stud, along with the washer's protrusion, were the 'major component[s] of the lock.'" Doc. 434 at 16 (citing Dyer Trial Tr. 422:24-423:6); see also Dyer Trial Tr. 423:6-10 ("The stud, though, because that protrusion is out, is locked into that little notch. There's a notch in the stainless steel arm, and the stud goes up against the notch in the arm, and then the plastic springs out, and that locks it."). At

trial, Plaintiff's expert also interpreted a mechanical lock as "any mechanism that holds another part in place." Trial Tr. 470:18-21. Defendant also contends that Plaintiff's argument that "the elimination of a small, non-functional protrusion and the specification of a torque level applied to the hinge" are "nominal" is contrary to the weight of the testimony at trial.[4] Doc. 434 at 17-18.

In examining those aspects of the Litigated Design that were "previously alleged to be and were a basis for the prior finding of Infringement" and the modified features of the Redesign, it appears that while seemingly minor, Defendant's modifications in the Redesign are significant. As Defendant highlights, Plaintiff's trial theory of infringement centered around the interaction between "the protrusion" which interacted with a "cantilever spring." See Doc. 434-2 ("Dyer Trial. Tr."), lines 422:24-423:2 (Plaintiff's expert called the Delrin washer "the major component of the lock"); Dyer Trial Tr., lines 423:3-21 (Plaintiff's expert described the protrusion and stud as "two important parts to the lock" as well as the "cantilevered spring" or "cutout").

### C. Whether the Redesign Infringes Claims 4 and 5 of the '880 Patent

Even if the Court determined that the differences between the Litigated Design and the Redesign are "no more than colorably different" the Court would not hold Defendant in contempt because the Redesign does not infringe the '880 patent.

---

[4] In their briefs, the parties disagreed concerning the standard by which the Court should analyze whether the redesign is "colorably different." Plaintiff sought to use the "function/way/result" test, which would require the Court to examine whether the Redesign performs "substantially the same function in substantially the same way with substantially the same result." However, as Defendant noted, this test is the same test applied in determining whether a product infringes under the doctrine of equivalents. Considering the Federal Circuit's caution to keep the "colorably different" analysis separate and distinct from the infringement analysis under Tivo, the Court examines whether the product is colorably different by examining "the features relied upon to establish infringement and the modified features of the newly accused products" to determine whether the modifications are significant. See Ncube, 732 F.3d at 1349-50 ("As the separation of the colorable-differences and infringement components in TiVo indicates, the colorable-differences standard focuses on how the patentee in fact proved infringement, not what the claims require.")

10

Literal infringement exists when every limitation recited in the claim is found in the accused device. Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341 (Fed. Cir. 2016). "In determining whether or not a means-plus-function element is literally infringed, the relevant structure of the accused product must perform the identical function recited in the claim, and be identical or equivalent to the corresponding structures disclosed in the patent specification for that function." See, e.g., Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., 145 F.3d 1303, 1308 (Fed.Cir.1998) (citing Pennwalt Corp. v. Durand–Wayland, Inc., 833 F.2d 931, 934 (Fed.Cir.1987). "[T]here can be no infringement as a matter of law if a claim limitation is totally missing from the accused device." Gen. Am. Transp. Corp. v. Cryo-Trans, Inc., 93 F.3d 766, 771 (Fed. Cir. 1996)

"[A] patentee may establish infringement under the doctrine of equivalents if an element of the accused device 'performs substantially the same function in substantially the same way to obtain the same result as the claim limitation.'" EMD Millipore Corp. v. AllPure Techs., Inc., 768 F.3d 1196, 1202 (Fed. Cir. 2014). In addition, the Supreme Court has explained that "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29, 117 S. Ct. 1040, 1049, 137 L. Ed. 2d 146 (1997).

*i.    Infringement of Claim 4*

The parties dispute whether the Redesign infringes the following element of claim 1: "a <u>spring biased locking mechanism</u> configured to hold at least one of said moveable arms in a stationary position when said platform is in said deployed position and releasable to

accommodate movement of said platform to said stored position." In the Court's Markman Order, the Court construed the term "spring biased locking mechanism" to mean "[a] structure that mechanically locks a component in place through the use of a spring biased mechanism." Doc. 110 at 14, 19.

Plaintiff argues that Claim 4 is infringed under the doctrine of equivalents. Plaintiff argues that the components of the hinge (namely the stationary and moveable arms, Delrin washer, pin and stop) form a structure that mechanically locks the moveable arms in place in the deployed position. Dyer Decl. at ¶ 34. As to the requirement that this mechanical locking take place "through the use of a spring biased mechanism", Plaintiff argues that the friction lock requires utilization of the elastic properties of both the Delrin washer and the center bolt of the hinge. Id. at ¶¶ 35-40. And, since the friction lock uses elastic properties to function, Plaintiff contends that it behaves in a "spring-like manner", even though it may not be recognizable as using a traditional spring biased mechanism. Id. Plaintiff also claims that friction locks are known to be interchangeable with spring-biased locks, which is another basis for finding that they are equivalent. Id. ¶¶ at 41-42.

Defendant contends that the Redesign "eliminated key claim limitations" and that "there can be neither literal infringement nor infringement under the doctrine of equivalents when the accused product lacks a claim limitation." Doc. 434 at 24 (citing Cole v. Kimberly-Clark Corp., 102 F.3d 524, 532 (Fed. Cir. 1996); Warner-Lambert Co. v. Purepac Pharm. Co., 503 F.3d 1254, 159 (Fed. Cir. 2007). Defendant argues that Claim 4's requirement that "something that mechanically locks a component in place" has been eliminated because the Redesign removed the cantilever spring and protrusion, there is no longer a "structural component that mechanically locks another component in place." Doc. 434 at 25. Defendant also urges this Court to reject

Plaintiff's expert declaration which attempts to define a lock as "any device or part for stopping temporarily the motion of a mechanism." Id; see also id, n. 8 (citing Dyer Trial Tr. at 470:18-21 (at trial Dyer interpreted a mechanical lock as "any mechanism that holds another part in place."). Defendant contends that Claim 4 requires a "spring biased locking mechanism." (citing Markman Tr. at 77:12-19) (the Court noted: "some action has to be taken to unlock it. You can't unlock it by pushing on it." Defendant again points to the statements that Plaintiff made at the jury trial, supra, regarding the interaction with the protrusion, the cantilever spring, and the stud on the metal hinge. Doc. 434 at 25.

### ii. Infringement of Claim 5

The parties dispute whether the following element in Claim 5 is met: a "<u>means for locking</u> said coupling means in a stationary position when said step is in said deployed position, said locking means further configured to accommodate movement of said step to said stored position." In the Markman Order, the Court construed the term "means for locking" to mean:

> **Structure(s):** Spring-biased sliding pin mechanism, common cotter pin, fastening eye bolt, trap door automatic catch lock, and the equivalents of these structures at time of patent issuance.
> **Function:** Mechanically locking said coupling in a stationary position when the step is deployed in a manner which allows it to be returned to the stored position.

Doc. 110 at 14-15, 19.

Plaintiff argues that the Redesign infringes claim 5 both literally and under the doctrine of equivalents. First, Plaintiff argues that the friction hinge performs the identical function of "mechanically locking at least one of the movement arms in a non-moveable position when the step is in the deployed position and is releasable to accommodate movement of the step to the stored position." Dyer Decl. at ¶ 44 (The friction lock "provides . . . friction to restrict movement of the hinge.") Plaintiff argues that "the friction lock is further releasable to allow

13

movement of the step from the fully deployed position back to the stored position if a sufficient amount of force is applied." Id. As it pertains to function, Plaintiff contends that the friction lock in the Redesign performs at least substantially the same function by holding the moveable arm in the deployed position against the urging of the buoyant step until a user pulls up the step with sufficient force to overcome the frictional forces in the hinge. Dyer Decl. at ¶ 52. A force greater than the amount of buoyancy is required to free the step from its deployed position to enable it to be moved to the stored position. Id.

Defendant attacks Plaintiff's focus on the swim step's ability to "resist buoyancy to remain in the deployed position." Doc. 434 at 28. Defendant contends that the ability of a step to "resist buoyancy" is contrary to the Court's claim construction, which construed the term "to include only mechanical locks." Id. Additionally, Defendant claims that Cobalt's position raises the concerns of claim vitiation and encompassing prior art. (citing Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co., 520 U.S. 17, 39, n. 8 (1997); Akzo Nobel Coatings, Inc. v. Dow Chem. Co., 811 F.3d 1334, 1341-43 (Fed. Cir. 2016) ("Under the doctrine of equivalents, an infringement theory thus fails if it renders a claim limitation inconsequential or ineffective. And as we have explained, "saying that a claim element would be vitiated is akin to saying that there is *no equivalent* to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests."); DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1322 (Fed. Cir. 2009)( ("Even if this [function-way-result] test is met, however, there can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art.") (citing Wilson Sporting Goods Co. v. David Geoffrey & Assoc., 904 F.2d 667, 683 (Fed. Cir. 1990), overruled in part on other grounds; General Am. Transp. Corp v. Cryo-Trans, Inc., 93 F.3d 766, 771 (Fed. Cir. 1996); see also Planet

Bingo, LLC v. GameTech Int'l, Inc., 472 F.3d 1338, 1345 (Fed. Cir. 2006) (The vitiation concept has its clearest application "where the accused device contain[s] the antithesis of the claimed structure.").

Defendant argues that Plaintiff is "broadening its claims in a way that reads upon the prior art because Cobalt was not the first to invent a swim step that rotates off the back of the boat to be used in water." Doc. 434 at 29; see id. at 30 (citing Dryer Decl. ¶¶41-42 (conceding that friction locks were known at the time of the invention).

The Court **FINDS** that Plaintiff has not presented sufficient evidence by which the Court can conclude that Defendant's Redesign infringes Claims 4 or 5 of the '880 patent either literally or under the doctrine of equivalents. It appears that Defendant's Redesign operates entirely based on friction, and the Court cannot find, as a matter of law, that "deforming the plastic" by use of friction is a "spring-based mechanism" or a locking mechanism. Further, friction is a law of nature and is not patentable in and of itself. See Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014).

### V. CONCLUSION

For the reasons cited above, the Court DENIES Plaintiff's Motion, Doc. 427.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is s **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December /(, 2018